[Civ. No. 16878.   Second Dist., Div. Two.   May 12, 1949.]

DENNIS RAY BAUGH, a Minor, etc., Appellant, v. CLYDE
BEATTY et al., Respondents.

Byron R. Bentley and Rogers & Carnes for Appellant.

Reginald I. Bauder, Bauder, Gilbert, Thompson, Kelly & Veatch for Respondents.

WILSON, J.—From a judgment in favor of defendants in an action to recover damages for personal injuries, plaintiff appeals. He has also purportedly appealed from the order denying a new trial.

Plaintiff, a minor 4 years of age, was taken by his parents to the circus operated by defendants. Following the performance in the main tent they went to see the animals in the "animal tent" and it was there that plaintiff was bitten by a chimpanzee, sustaining the injury which is the basis of this action.

The chimpanzee was in a circus wagon cage in the front of which there were perpendicular iron bars set about 3 inches apart. There was no meshed wire inside or around the bars of the cage to prevent the ape from reaching his arms through

the bars. The wagon, together with other wagons containing animals, was set back approximately 5 feet from a rope or chain, which was about 3 feet above the ground, and which passed through holes in the poles holding up the tent. There was no fence under the rope to keep small children back and no guard in the vicinity of the cage. At the time of the incident there were from 100 to 200 people along the rope in front of four or five animal cages and some of the ladies in the crowd were reaching over the rope and feeding peanuts to the chimpanzee. At plaintiff's request his father put him down. The child worked his way through the crowd, under the rope and up to the cage containing the ape. The boy was next seen holding a peanut up to the animal which reached through the bars, grabbed the child's hand and bit him.

Plaintiff assigns two grounds of error: (1) that he was deprived of a fair and impartial jury trial when defendants' attorney was permitted, over plaintiff's objection, to use the so-called "jury book" in selecting jurors, and (2) the giving and refusing of certain jury instructions.

The affidavit of plaintiff filed with his motion for a new trial sets forth the following with respect to the "jury book": ". . . said book contains a page for each juror and that in that book there is listed the name, address, age, occupation, spouse's occupation, and other data pertaining to said juror; that included in the book is a list of all the cases on which each juror has *set* and a statement of how he voted, and where he voted for damages, the amount voted for by him; that also included in the service of the said book is a rating sheet as to the different jurors, with the jurors being classified by a certain number of stars, red and blue or other colors, indicating that they are decidedly pro-plaintiff, fairly pro-plaintiff, neutral, fairly pro-defendant or decidedly pro-defendant; that some of the data is taken from the jury list and some is obtained from other sources and that in the collection of data and arranging the said ratings the party preparing said book makes it a common practice to talk to court attaches, attorneys who have tried cases, judges, and even the jurors themselves to determine the views, prejudices, interests, and propensities of the different jurors; . . . that said book is rented to attorneys at a price in the neighborhood of $25.00 per trial; . . ." Defendants have not denied these allegations.

Plaintiff contends that the use of this jury book defeats the right to an impartial and unbiased jury; that it con-

stitutes an extraneous influence brought to bear upon the jury; that jurors know the service is in existence and see it used openly at the counsel table; that they know a record is being kept of their decisions and they may expect to be challenged on the basis of their past records and rating. Some of the material contained in the jury book may properly be obtained by interrogation of the prospective jurors on *voir dire* and much of it is available from the public records. Admittedly the use of the service by one litigant gives him an advantage over the opposing litigant in selecting jurors who he feels would be desirable from his standpoint. However, there is nothing in the record to indicate that the service is not available to either or both litigants upon the payment of the specified fee nor that plaintiff could not have had its use upon the same terms as defendants. Likewise there is nothing in the record to the effect that the jurors knew the purpose of the book, that they were in any way influenced by its use or that they were even aware that it was being used. ■ Furthermore, plaintiff took no exception to the ruling of the court upon his objection to the use of the jury book. The ruling is not one to which an exception is deemed by law to have been taken and the error, if any, was therefore waived. (Code Civ. Proc., §§ 646, 647; *Lee* v. *Murphy*, 119 Cal. 364, 367 [51 P. 549, 955]; *Hughes* v. *Duncan*, 114 Cal.App. 576, 579 [300 P. 147].)

Plaintiff asserts that the court erred in refusing to give two instructions requested by him: (1) covering the duty of an operator of a business toward an invitee in keeping the premises in a condition reasonably safe, and (2) an instruction on the attractive nuisance doctrine.

It is plaintiff's contention that the jury should have been instructed on the theory of negligence in failing to take reasonable precautions against injury to plaintiff as a business invitee, as well as that on the liability for injury by a wild animal. ■ A cause of action against the owner of an animal for injuries inflicted by it may be based upon negligence as well as upon the ground of the keeping of an animal known to be vicious. (*Clowdis* v. *Fresno Flume & Irr. Co.*, 118 Cal. 315, 322 [50 P. 373, 62 Am.St.Rep. 238]; see, also, *Ficken* v. *Jones*, 28 Cal. 618, 623.) ■ The complaint raises both issues and although they are contained in the one count, no demurrer having been interposed, an objection may not be raised for the first time on appeal. (*Roberts* v. *Eldred*, 73 Cal. 394, 398 [15 P. 16]; *Flint* v. *Conner*, 53 Cal.App. 279,

285 [200 P. 37] ; Code Civ. Proc., § 434.) ■ However, if the animal which inflicted the injury is vicious and dangerous, known to defendant to be such, an allegation of negligence on the part of defendant is unnecessary and the averment, if made, may be treated as surplusage. (*Opelt* v. *Al G. Barnes Co.*, 41 Cal.App. 776, 778 [183 P. 241].)

■ A litigant requesting it is entitled to instructions presenting his theory of the case and if inconsistent causes of action or defenses are alleged, the instructions covering them must necessarily be based upon conflicting and contradictory hypotheses. (*Brown* v. *Yocum*, 113 Cal.App. 621, 623 [298 P. 845] ; 24 Cal.Jur. 826 and cases cited.) ■ However, a wild animal is presumed to be vicious and since the owner of such an animal, or the owner of an animal which is known by him to be vicious and dangerous, is an insurer against the acts of the animal to anyone who is injured, and unless such person voluntarily or consciously does something which brings the injury on himself, the question of the owner's negligence is not in the case. (*Opelt* v. *Al G. Barnes Co., supra; Clowdis* v. *Fresno Flume & Irr. Co., supra.*) There was, therefore, no prejudicial error in the court's refusal to give the requested instruction on negligence.

■ Plaintiff's contention that the court erred in refusing to give his requested instruction on the attractive nuisance doctrine is not tenable. The instruction refers to the keeping of an "artificial and dangerous contrivance." An animal in a cage is not artificial and it does not fall within the definition of the word "contrivance" which is defined in Webster's New International Dictionary (2d ed.) (1947), page 580 as "a mechanical device; an appliance." Whether the attractive nuisance doctrine could be extended so far as to include a caged animal it is not necessary for us to determine, since the doctrine is not applicable to the facts in the present case. It is conceded that plaintiff was a business invitee and not being a trespasser there is no need to invoke the doctrine, which is but an exception to the rule that the owner of premises is under no obligation to keep it in a safe condition for trespassers. (*Melendez* v. *City of Los Angeles*, 8 Cal.2d 741, 745 [68 P.2d 971] ; *Crane* v. *Smith*, 23 Cal.2d 288, 301 [144 P.2d 356] ; *Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177, 185 [140 P.2d 467].)

■ The court instructed the jury with respect to the liability of the keeper of a vicious or dangerous animal, known

to be such by its owner.* Although plaintiff has not raised any objection to this instruction, it was not proper in the instant case since the animal was of the class of animals *ferae naturae*, of known savage and vicious nature, and hence an instruction on the owner's knowledge of its ferocity was unnecessary.

The court followed the instruction quoted in the footnote with two instructions which plaintiff maintains were incorrect statements of the law, were confusing and contradictory and constituted prejudicial error:

(a) "You are instructed that while the negligent conduct of the father, if there was any, is not imputed in law to his minor son, nevertheless if you should find that the sole proximate cause of the injury to the minor was the conduct of the father, whether negligent or not, then neither the child nor the father may recover. The term 'sole proximate cause' as used in this instruction means that cause which in natural and continuous sequence sets in motion the factors which accomplish the injury, or, in other words, the cause without which the injury would not have occurred."

The only conduct of the father which the jury could have considered was that of putting the child down in the proximity of the caged animal. Furthermore, the only proximate cause with which the jury need have been concerned was whether the acts of the animal were the cause of the injury.

(b) "You are instructed that while the keeper of a wild animal is liable to the public for injuries occasioned by such animal, unless the injured party knowingly or consciously conducts himself so as to make the injury possible.† In that connection you are further instructed that if the con-

---

*"Where injury is done by a vicious or otherwise dangerous animal, known to be such by its owner, the owner is liable to the injured person in a sum that will compensate him reasonably for all detriment suffered by him and resulting from the injury, unless the injured person knowingly and voluntarily invited the injury and brought it upon himself. To have done that, he voluntarily must have done something with respect to the animal that induced the injury and which he either knew, or should have known was dangerous. The principle of law does not require a finding that the owner was negligent. The liability attaches to his ownership of such an animal, with knowledge of its dangerous character, and makes him an insurer against injury done by it. Thus, in applying this rule of law, you are required first to ask and answer the question: Was the plaintiff injured by a vicious or dangerous animal? If so, two other questions must be answered: 1. Was that animal then owned by the defendants in this action? 2. Did the owners then have knowledge of the dangerous character of the animal?"

†The foregoing language, while copied from the record on appeal, is grammatically erroneous, incomplete and meaningless.

duct of the injured party was the sole factor which produced the injury and without which the injury could not have occurred then plaintiff may not recover.''

The second sentence of this instruction contradicts the first part and is not a correct statement of the law. Whether plaintiff's conduct was the sole factor which produced the injury is immaterial unless by such conduct he voluntarily and consciously placed himself in danger. Obviously if the child had not approached the cage the injury would not have occurred. ▋ Whether a minor of tender years has conducted himself with the care and prudence due from one of his years and experience is strictly a question of fact for the jury. (*Opelt* v. *Al G. Barnes Co.*, 41 Cal.App. 776, 781 [183 P. 241].) ▋ Thus the sole question for the jury to have determined was whether plaintiff knowingly and voluntarily invited the injury. These instructions could only serve to confuse the jury. They were clearly prejudicial since the jury could have reached but one of two conclusions, either that the conduct of plaintiff caused the injury or the conduct of the father was the cause of the injury, in either of which events, the jury was told, plaintiff could not recover. What the jury should have been told to determine was whether under the circumstances of the case plaintiff knowingly or consciously placed himself in danger.

Judgment reversed. The order denying a new trial being a nonappealable order the attempted appeal therefrom is dismissed.

Moore, P. J., and McComb, J., concurred.