[Civ. No. 24171. Second Dist., Div. Two. Oct. 5, 1960.]

ISADOR KAVNER, Appellant, v. NORVIN NATHANIEL HOLZMARK et al., Respondents.

Pestana & Kidwell and Hugh R. Manes for Appellant.

Gilbert, Thompson & Kelly and Spray, Gould & Bowers for Respondents.

ASHBURN, J.—Appeal from judgment for defendants rendered pursuant to jury verdict in personal injury action and from order denying motion for new trial. Appellant's brief says: "This appeal is based solely upon the ground that the trial court failed and refused to give instructions to the jury on the Doctrine of Last Clear Chance."

 Pursuant to augmentation of the record ordered upon the court's own motion (Appeals rule 12), it appears that plaintiff requested the giving of an instruction based upon the formula stated in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432], hence a proper one.[1] It should have been given if the record contains evidence substantially supporting every element of that theory (*Bonebrake* v. *McCormick,* 35 Cal.2d 16, 17-18 [215 P.2d 728];

---

[1] The requested instruction is BAJI 205, found in the supplement to the 4th edition. It reads:

"A certain reasoning process that we sometimes call to our aid in analyzing the facts of an accident case is known as the Doctrine of Last Clear Chance. It is permissible to use the doctrine only after we first find, and you may not use it unless and until you first shall have

*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 638 [255 P.2d 795]), and in canvassing that question the evidence must be viewed in the light most favorable to appellant. (*Selinsky* v. *Olsen*, 38 Cal.2d 102, 103 [237 P.2d 645] ; *Zanon* v. *Moher*, 136 Cal.App.2d 348, 350 [288 P.2d 597].)

Counsel for appellant builds his argument upon the concession and assertion that plaintiff through his own negligence got into a position of danger from which he was unable to escape by the use of ordinary care. Respondent does not contest this proposition. The real controversy revolves around the questions (1) when, if at all, defendant first actually knew that plaintiff was in a position of danger and also knew or should have known he was unable to escape therefrom, and (2) whether defendant thereafter had a last clear chance to avoid the accident by exercise of ordinary care.

The accident happened on Vermont Avenue in Los Angeles (a north-south street), some 50 to 65 feet south of the south curb of Rosewood Avenue, which intersects Vermont from the west making a T intersection. It was in the afternoon of a clear day and Vermont Avenue is practically level over the area in question. Defendant Holzmark was driving a Plymouth automobile south on Vermont in the second lane from the double white line. Plaintiff Kavner was crossing the street on foot from east to west between intersections and at an angle. He was hit by defendant's car when about 50 to 65 feet south of the south crosswalk of the Rosewood intersection. Defend-

---

found, that in the events leading up to the accident in question both the plaintiff (deceased) and defendant were negligent.

"The Doctrine of Last Clear Chance may be invoked if, and only if, you find from the evidence:

"First: That the (plaintiff) (deceased) was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger;

"Second: That defendant knew that plaintiff (deceased) was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff (deceased) was unable to escape therefrom;

"Third: That thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff."

ant was going at a speed of 25 to 30 miles per hour. The car left straight four-wheel skid marks, starting 30 feet south of the south curb of Rosewood and ending 84 feet south of that curb, 54 feet of skid marks. The crosswalk was 18 feet wide and the skid marks started 12 feet south of its south line. The front right fender of the automobile hit plaintiff and threw him through the air a few feet and to the ground. The car went a short distance and stopped. Plaintiff testified that he had looked to the right after leaving the east curb and looked to the right and left when at the middle of the street, but did not see or hear defendant's car at any time before he was struck. Defendant swore he did not see plaintiff until he had passed the intersection about 10 feet and that plaintiff was 40 feet ahead of him and in front of the center of the automobile; that he immediately applied the brakes, the right front fender hit plaintiff who seemed to be looking at defendant's car and trying to get out of the way—running or jumping—and throwing up his hand. Police Officer McCauley testified as an expert that the skid marks showed minimum speed of the car to have been 27½ miles per hour, that the normal reaction time of the average American driver (one who has been alerted to the fact that he will be required to make a stop) is three-fourths of a second, during which time a car traveling 27½ miles an hour will cover 40 feet before the brakes take hold.

Of course, actual knowledge of plaintiff's dangerous position—a situation in which he is in danger from which he is unable to extricate himself through use of reasonable care—is basic to the application of the last clear chance doctrine. *Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 740: "This formula thus uses the term 'position of danger' (subd. 1) and requires that 'defendant has knowledge that the plaintiff is in such a position' (subd. 2). It further requires that defendant 'knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation' (subd. 2). Therefore the time for the exercise by defendant of any last clear chance, as defined in the formula, commences only at such time as defendant has both (1) actual knowledge of the injured person's 'position of danger' and (2) actual or constructive knowledge that the injured person 'cannot escape from such situation.' " At 742: "As the authorities require actual knowledge of plaintiff's position of danger [citations] and, on the other hand, require only constructive knowledge of plaintiff's inability to escape

[citations], there appears to be no doubt concerning the meaning of the formula in this regard. . . . Thus under the prevailing view elsewhere, as well as under the California cases, actual knowledge of plaintiff's position of danger is required, but constructive knowledge of his inability to escape will suffice.'' A substantial period of time must elapse after defendant has gained knowledge that plaintiff is in danger before defendant can be said to have had the last clear chance.

■ ''It seems entirely clear that the time when defendant is chargeable with actual knowledge of the injured person's position of danger may substantially precede the time when defendant is chargeable with actual or constructive knowledge of the injured person's inability to escape therefrom; but defendant is not liable under the doctrine unless after the time that he is chargeable with the required knowledge of the injured person's inability to escape, he 'has the last clear chance to avoid the accident by exercising ordinary care.' '' (*Brandelius* v. *City & County of San Francisco, supra,* p. 741.)

■ Appellant's counsel argues that the evidence would warrant a finding that defendant did see plaintiff in a perilous position because another motorist, Mr. Dorlig, who was following some 30 feet behind him, saw plaintiff crossing the street. Of course that mere fact does not place plaintiff in danger, because a pedestrian can stop at any moment. When Dorlig saw him he was not in danger. Dorlig testified: ''Q. And when you observed Mr. Kavner crossing the street at that time you took only a casual interest in him because you assumed that he had plenty of time to get across that street? A. Either that or he would stop. I mean there was no danger there that would attract my attention. Q. He didn't look like a person then, Mr. Dorlig, who was in a position where he was about to be hit by a car? You didn't see him in that kind of a position at all? A. No.'' So he paid no more attention and plaintiff disappeared from Dorlig's view, which was obstructed at that point by the defendant's car which was somewhat to the right and front of Dorlig. He said plaintiff disappeared in front of that car. A screech of brakes drew his attention and as he looked plaintiff was flying through the air. He further said: ''In other words, the impact and the screeching of the brakes and all were all in one time sequence.'' Also: ''Well, the two were continuous. In other words, there wasn't the screeching of brakes and then a time interval and then a hitting of the person. The two were simultaneous. The screeching of the brakes and then this man flying through the air.''

Dorlig's testimony that when he saw plaintiff crossing the street there was no danger that would attract his attention, that he assumed he had plenty of time to cross or would stop —this testimony points to an applicable principle which should not be overlooked in this case.

■ " 'The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which comes to him only from violation of law or duty by such other person.' (29 Cyc. 516; *Medlin* v. *Spazier,* 23 Cal.App. 242 [137 P. 1078].)'' (*Harris* v. *Johnson,* 174 Cal. 55, 58 [161 P.2d 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477].) To same effect see *Leo* v. *Dunham,* 41 Cal.2d 712, 715 [264 P.2d 1]; *Bogner* v. *Eubanks,* 137 Cal.App.2d 181, 184 [289 P.2d 875]; *Rodela* v. *Southern Calif. Edison Co.,* 148 Cal.App.2d 708, 716 [307 P.2d 436]; *Hughey* v. *Candoli,* 159 Cal.App.2d 231, 237 [323 P.2d 779]. ■ "It is axiomatic that in the absence of conduct to put him on notice to the contrary a person is entitled to assume that others will not act negligently or unlawfully." (*Porter* v. *California Jockey Club, Inc.,* 134 Cal.App.2d 158, 160 [285 P.2d 60].) This rule is peculiarly applicable to the case of a pedestrian who approaches the path of a moving vehicle. ■ *Dalley* v. *Williams,* 73 Cal.App.2d 427, 436 [166 P.2d 595]: "It has been held, in a certain class of cases, that if a defendant, while still a considerable distance away from the accident, sees the plaintiff approaching the place of danger, he has a right to assume, until the circumstances apprise him to the contrary, that the plaintiff will stop before reaching the place of danger."

■ "Plaintiffs' state of helplessness was created only by their act of leaving their position of safety near the center of the street and stepping directly into the path of danger. Under any view of the evidence, plaintiffs could not have taken more than two or three steps after leaving a place of safety and before the accident happened. Therefore plaintiffs' act of negligence in leaving a place of safety and stepping directly into the path of the oncoming bus necessarily occurred almost simultaneously with the happening of the accident. Under these circumstances, such negligence cannot be deemed 'remote in causation,' and it cannot be said that defendants thereafter had a last clear chance to avoid the accident."

(*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 490 [283 P.2d 1].)

"If plaintiffs were walking, slow or fast, across the south half of the street (as they claim), and the defendant did not waive them across (as he claims), they were in no danger until they were in defendant's line of travel; they were aware of his approach as all the evidence shows; they could always save themselves by stopping, as any pedestrian can do immediately (see *Holmes* v. *South Pac. C. Ry. Co.,* 97 Cal. 161, 170 [31 P. 834]), until they stepped into defendant's path when he was traveling so fast that he could not stop in time to avoid them. When that situation developed, if it did, there was no last clear chance because defendant had no chance at all." (*Holman* v. *Viko,* 161 Cal.App.2d 87, 100 [326 P.2d 551].)

 Appellant attempts to establish circumstantially that defendant saw plaintiff crossing the street at or about the same time that Dorlig did so. Pertinent to this claim is the language of *Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App. 2d 269, 273 [247 P.2d 951] : "We have to look to the evidence, direct and circumstantial, as to the location of plaintiff's car when defendant first saw it. The only direct evidence was that of defendant. The only circumstantial evidence was that defendant could have seen plaintiff's car when it entered the intersection. This was not sufficient. It was necessary that there be substantial evidence that defendant actually saw the car. All the elements which go to make up the last clear chance doctrine must be affirmatively proved." *Zanon* v. *Moher, supra,* 136 Cal.App.2d 348, 353 : "In *Young* v. *Carlson,* 128 Cal.App.2d 743 [276 P.2d 23], in considering the question as to whether it will be presumed, in spite of respondent's denial, that he did see appellant in time to have avoided the accident, the court said that it 'must be remembered that the basic rule is that plaintiff's perilous position must be actually discovered by the defendant, that is, the direct or circumstantial evidence must show actual knowledge. It is true that actual knowledge may sometimes be inferred, . . . but such inference can only be indulged in where from the evidence such inference is clear and positive. The inference may not be based on conjecture or speculation.' (See also *Jobe* v. *Harold Livestock Com. Co.,* 113 Cal.App.2d 269 [247 P.2d 951].)''

 Pursuing this claim that defendant saw plaintiff at or about the time Dorlig did, counsel for appellant argue that plaintiff was jaywalking and was oblivious to approaching

danger because of his failure to make reasonable observations concerning southbound traffic, that the evidence warrants an inference that defendant saw plaintiff in a position of danger and failed thereafter to exercise reasonable care to avert the accident. This argument ignores the important fact that defendant, had he seen plaintiff in time to avoid hitting him, was not charged with the duty of affirmative action until some fact or circumstance conveyed to his mind in the exercise of reasonable care the probability that plaintiff would not stop, as he obviously could do within a step or two. We see no basis in the evidence for appellant's claim that defendant had knowledge or notice of the fact, if it be a fact, that "appellant was oblivious to southbound traffic until the last moment."

Failure of defendant to blow his horn or to swerve to right or left well may argue negligence on his part but not last clear chance, for the essential element of defendant's being alerted to the probability that plaintiff would step into the path of his car is still missing.

As stated in *Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 483: "If any one of these elements is absent, the doctrine does not apply and the case is governed by the ordinary rules of negligence and contributory negligence." Also, at pages 487-488: "These authorities recognize, however, that it is only the exceptional case to which the doctrine may be applied, and that the mere fact that there is ample evidence to show that a defendant is negligent, without substantial evidence of the existence of the other required elements, will not warrant the application of the last clear chance doctrine. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 293.)

"The underlying basis for the application of this doctrine, which permits an injured person to recover despite his continuing and contributory negligence, is that defendant was afforded a *last* chance and a *clear* chance to avoid the accident *after* defendant had discovered that plaintiff was in a helpless situation. . . . But the chance which is afforded to defendant must be something more than a bare possible chance. It must be not only a *last* chance but a *clear* chance, following actual knowledge of plaintiff's helplessness, to avoid the accident by the exercise of ordinary care; and, by its very terms, the doctrine excludes from its application any case in which plaintiff's state of helplessness, resulting from his own negligence, is created so nearly simultaneously with the happening of the accident that neither party may be

fairly said to have thereafter a last clear chance to avoid the accident."

*Kowalski* v. *Shell Chemical Corp.*, 177 Cal.App.2d 528, 533-534 [2 Cal.Rptr. 319] : "The Brandelius case emphasized that the time for the exercise by the defendant of any last clear chance to avoid an accident commences only after the defendant acquires both actual knowledge of the plaintiff's position of danger *and* actual or constructive knowledge of the plaintiff's total inability to escape therefrom (47 Cal.2d 740, 741, 743) and not only must the chance which is afforded be a last chance but a clear chance. This implies that the defendant must have had more than a bare possible chance to avoid an unexpected peril created simultaneously with the happening of the accident by the negligence of the injured party so that neither party may be fairly said to thereafter have had a last clear chance to avoid the accident. [Citations.]

"Plaintiff's contention that Powell must have seen plaintiff before the latter entered the intersection must be rejected for two reasons. First, as was said in *Bagwill* v. *Pacific Electric Ry. Co.* (1928), 90 Cal.App. 114, 121 [265 P. 517] : 'Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claims of last clear chance. The words mean*s* exactly as they indicate, namely, last *clear* chance, not possible chance.' "

We find that there was no error in the court's refusal to instruct upon the doctrine of last clear chance.

Judgment and order denying new trial affirmed.

Fox, P. J., concurred.