[Civ. No. 6319. Fourth Dist. Dec. 5, 1960.]

CHARLES RAY WELCH et al., Appellants, v. FRANK M. GARDNER, Respondent.

Carroll & Anderson for Appellants.

Chase, Rotchford, Downen & Drukker and Alan W. Ford for Respondent.

GRIFFIN, P. J.—Plaintiffs-appellants, husband and wife, brought this wrongful death action against defendant-respondent to recover damages for the death of plaintiffs' son, aged

4 years, occasioned when the minor child suddenly ran partly across Highway 99 near Coachella and was struck by defendant's car. This highway ran generally north and south. The paved portion was divided into two 12-foot lanes with a white center line. It had oil shoulders, each about 6 feet in width. The surrounding terrain was level and sparsely settled. Near the point of collision and east of the highway were a few homes and large overhanging trees. Plaintiffs lived in one of these homes, back from the highway. Two stores and a cafe were located some distance apart on the west side of the highway. The weather was clear and warm and the pavement hot. There were no immediate cross streets and the road was straight and the view unobstructed for a distance of at least 1,871 feet. Permissible speed of 55 miles per hour was indicated.

About 2 p.m. on August 31, 1957, defendant, aged about 80 years, was driving his 1951 Fraser automobile north in the easterly lane at a speed estimated at about 40 to 50 miles per hour.

Defendant testified that as he approached the vicinity of the stores at about 30 miles per hour, and at a point about 75 feet from the point of collision, he saw a lady (baby-sitter Christine Todd) run across the highway in front of his car from west to east and saw some children standing on the west edge of the highway or shoulder; that he started to brake his car and may have turned slightly toward the center line to miss the baby-sitter, and he then, for the first time, saw the 4-year-old boy (Danny) running almost in front of him across the highway from west to east; that he applied his brakes and the center of his car struck the boy and carried him for some distance (30 to 40 feet) up the northbound lane before his car came to a stop.

Christine Todd, aged 14, employed by plaintiffs as a baby-sitter to care for plaintiffs' three children while they were away at work, testified to a very different set of facts as to her actions at the scene. She said that she had cared for these children during the day for nearly one month; that she had been instructed by plaintiffs to walk the children across the highway to the store some time during each day to purchase ice cream or popsicles for them; that she had been warned by plaintiffs to hold Danny's hand while crossing the highway and also to hold the hand of either Edward, aged 8, or Janice, aged 9, at the same time. The children, including Danny and the baby-sitter, had been particularly warned of the danger

of the traffic on the highway and the baby-sitter had had particular warning as to Danny, that he had on past occasions broken away and crossed the highway unattended.

On the day in question, Christine Todd testified that she and the children had been barefooted but since the sand was hot she had the children put on their sandals or shoes; that they crossed the highway, went to the store, purchased popsicles and started back down the west portion of the highway or shoulder in the following fashion : She walked nearest the white center line; Danny was to her right holding her hand and the other two children were holding hands and walking to her right; that as they reached a point farther south she looked up the highway and saw no cars; that she then placed Danny on her left side, holding his hand, the other two on her right, holding hands; that they all walked about abreast across the highway from west to east, the children a little in back of her, and as she came to the white center line she looked up and saw a car approaching from the south; that she could not tell the distance it was from her; that she then turned the children around and was walking back to the west shoulder when Danny jerked away from her and ran back onto the highway, stopping near the white center line when she called to him; and that he turned around and was struck by the oncoming car of defendant. She estimated defendant's speed at 60 miles per hour. She stated that the boy's body was found on the east side of the highway in the northbound lane and she did not notice defendant's car swerve at the time it struck him.

In her previous deposition she testified to a different set of facts, i.e., that defendant's car was about 75 feet from her when she first saw it; that when they came out of the store and walked down the west side of the highway Danny was holding her left hand and was walking nearest the center line and when they stopped to cross the highway she looked up and saw no cars; that they started across and ". . . I had gotten across and the children were a little ways behind, so I saw this car coming and I got back, and all of a sudden he (Danny) took off, the little one, he took off, running" and the left front fender of defendant's car hit him.

Janice, the daughter, testified that when they crossed the highway, west to east, Danny was on the left of Christine and Christine went first and ran all the way across to find a cool shaded spot on account of the hot pavement and then she came back and took hold of her (Janice's) hand and

Christine started after Danny but he wouldn't let her take his hand, and he started to run across the highway. When they called to him he stopped just west of the center line and did not move or look in either direction and he was struck by defendant's car. Janice testified to a statement claimed to have been made by defendant that he was "sorry . . ." that he "must have stepped on the gas instead of the brake . . ." This was denied by defendant and no other witnesses present heard such a statement.

A traffic officer later arrived and said he could not determine the exact point of impact; that a popsicle which Danny had apparently been eating was found in the southbound lane near the center line and two sandals were found in the northbound lane. Blood spots and stains were found in the center and northbound lane extending up to 150 feet where the car came to a stop on the shoulder of the northbound lane. No skid marks of the car were noticed. There was a dent in the grill of the radiator and on the hood above the center of it. The officer testified there was no evidence that defendant's car went into the southbound lane. However, he said at the coroner's inquest that all blood marks and both sandals were found in the northbound lane and he marked the map at that time as showing the point of impact in the center of the northbound lane.

Plaintiff Charles Welch testified that he arrived at the scene some time later; that there were pieces of dirt on both sides of the center line; that the popsicle was 2 or 3 feet west of the center line, and the sandals 2 or 3 feet north of it in the southbound lane; that blood marks were in the center and one was found north in the northbound lane; that the child had been cautioned several times about the danger of crossing the highway and plaintiffs knew that Christine was crossing it each day to obtain ice cream for the children at their direction.

Expert witnesses were produced in reference to stopping distances and time in relation to speed, indicating that going 50 miles per hour it would take 3.68 seconds to stop in a distance of 135 feet, and one such witness also demonstrated, by the use of a time clock and court attaches, together with Miss Todd and others, what time he believed it would take to go from the west side of the highway and return, excluding time for Danny to return to the center white line. He came up with a figure of 15 to 19 seconds. There was further testimony that a car going 45 miles per hour should be able to stop within 105 to 110 feet, excluding reaction time.

We have set out in some detail all evidence produced on the several versions of the accident in order that the complaint that the trial court improperly refused plaintiffs' instructions on the doctrine of last clear chance may be considered. The instruction pertains solely to the minor Danny and his conduct and the conduct of defendant. It reads in part:

"It is permissible to use the doctrine only after we first find, and you may not use it unless and until you first shall have found, that in the events leading up to the accident in question both the deceased and defendant were negligent. . . . That defendant knew that deceased was in a position of danger and further knew, or in the exercise of ordinary care should have known, that deceased was unable to escape therefrom; . . . That thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure."

Plaintiff cites many cases on the subject, all factually dissimilar, such as *Mason* v. *Hart*, 140 Cal.App.2d 349 [295 P.2d 28]; *Selinsky* v. *Olsen*, 38 Cal.2d 102 [237 P.2d 645]; *Brooks* v. *E. J. Willig Truck Transp. Co.*, 40 Cal.2d 669 [255 P.2d 802]; *Gillette* v. *City and County of San Francisco*, 58 Cal.App.2d 434 [136 P.2d 611].

In *Kavner* v. *Holzmark*, 185 Cal.App.2d 138 [8 Cal.Rptr. 145], the doctrine is fully discussed and cases are cited in support of the rules pronounced. (See also *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432].) ▪ The Kavner case holds that the last clear chance doctrine excludes from its application any case in which plaintiff's state of helplessness, resulting from his own negligence, is created so nearly simultaneously with the happening of the accident that neither party may be fairly said thereafter to have a last clear chance to avoid the accident. ▪ The underlying basis for application of the last clear chance doctrine is that defendant was afforded a last and a clear chance to avoid the accident after he had discovered that plaintiff was in a helpless condition. Where plaintiff's negligence in leaving a place of safety and stepping directly into the path of an oncoming vehicle occurred almost simultaneously with the happening of the accident, it could not be said that the vehicle driver thereafter had a clear chance to avoid the accident. In an action for personal injuries sustained by a pedestrian when struck by defendant's automobile at an intersection, there must be substantial evidence that de-

fendant actually saw plaintiff crossing the street in order to invoke the doctrine of last clear chance; mere circumstantial evidence that defendant could have seen the pedestrian when he entered the intersection was insufficient. ▮ An inference that defendant had knowledge of plaintiff's perilous position, justifying application of the last clear chance doctrine, may not be based on conjecture or speculation and can be indulged only where it is clear and positive under the evidence. ▮ Actual knowledge of plaintiff's dangerous position—a situation in which he is in danger from which he is unable to extricate himself through use of reasonable care —is basic to application of the last clear chance doctrine. ▮ The time for defendant's exercise of any last clear chance commences only at such time as he has both actual knowledge of the injured person's "position of danger" and actual or constructive knowledge that such person "cannot escape from such situation." ▮ The time when defendant is chargeable with actual knowledge of the injured person's position of danger may substantially precede the time when defendant is chargeable with actual or constructive knowledge of the injured person's inability to escape therefrom, but defendant is not liable under the last clear chance doctrine unless after the time he is chargeable with the required knowledge of the injured person's inability to escape, he has the last clear chance to avoid the accident by exercising ordinary care.

▮ Guided by the rules, we conclude that the trial court was justified in holding that there was no substantial evidence supporting the doctrine and in refusing the proffered instructions. Although it might well appear that defendant did observe the children standing off the highway or on the west shoulder, when he was in a position to stop, yet they were not then negligent or in a perilous position. They were not negligent and they were not, under the law, afforded the right-of-way. (Veh. Code, § 21954, formerly § 562.)

As to the demonstration before the court and jury as to timing of the actions of the pedestrians, the trial court saw it and heard the evidence in reference thereto and apparently was not convinced that there was substantial evidence to support the doctrine or that the last clear chance instruction should have been given. As was said in *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 297 [246 P.2d 663] (quoting from *Bagwill* v. *Pacific Electric R. Co.,* 90 Cal.App. 114, 121 [265 P. 517]):

"Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely, last *clear* chance, not possible chance."

Under any view of the evidence, it fairly appears that defendant's opportunity to avoid the collision after he discovered that Danny was darting out in front of his car from the westerly shoulder of the highway, in the manner indicated, was a matter of split seconds and was not that last *clear* chance contemplated by the rule.

■ As to the question of the contributory negligence of the deceased, plaintiffs now, for the first time on appeal, claim that a boy conceded to be 4 years and 4 months of age is incapable of being guilty of contributory negligence. (Citing such authority as *Morales* v. *Thompson,* 171 Cal.App.2d 405 [340 P.2d 700] and *Ellis* v. *D'Angelo,* 116 Cal.App.2d 310 [253 P.2d 675].) But see *Baugh* v. *Beatty,* 91 Cal.App.2d 786 [205 P.2d 671] and *Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870]. See also cases collected in 174 A.L.R. 1080, 1119, and 107 A.L.R. 4, 102 et seq. There would be some merit to the argument if plaintiffs had raised the point at the trial and the court had refused an offered instruction to that effect. The complaint here merely alleges negligence on the part of defendant and the answer denies this allegation and sets up as a defense contributory negligence on the part of Danny and failure of plaintiffs to exercise due care for the safety of the deceased boy. The cause of action went to trial on these issues and the age of the child was known to all parties. No contention was ever made that the deceased was incapable of being negligent. In fact, in his argument to the jury, defendant's counsel stated that "Under the law it is possible for a four year old to be negligent. It depends, of course, on the circumstances, . . . It is also true under the law that a different standard is applied to adults than applied to children." No objection to this argument was made by counsel for plaintiffs. The contributory negligence of the parents, acting through their agent, Miss Todd, was also discussed. In reply to the argument, counsel for plaintiffs said:

"Now, in analyzing whether or not Danny Joe was contributorily negligent, you have to apply, as I know you will, the standards that are set before you by the court, namely,

that a person of four years of age only has to act as a reasonably prudent person does at four years of age."

Following the argument, plaintiffs offered five or six instructions on the question of negligence of defendant and contributory negligence on the part of Danny, which instructions were given. Plaintiffs joined with defendant in one instruction given on the standard of conduct for a child in reference to ordinary care and possibility of contributory negligence on the part of the minor. Defendant's instructions on the general defense of contributory negligence on the part of Danny and the parents were given. Two of plaintiffs' instructions in this regard were given, stating that the burden of proof of such defense of contributory negligence was on defendant and the degree of negligence on the part of deceased or his parents must amount to an absence of ordinary care and must contribute to some degree as a proximate cause of decedent's death. Among the refused instructions offered by plaintiffs is one stating: "The question as to whether or not the deceased, Danny Joe Welch, was guilty of negligence is one of the facts to be determined by the jury from all the evidence in the case . . ."

Furthermore, plaintiffs offered an instruction on the doctrine of last clear chance which doctrine, if adopted, would require a finding that deceased was also guilty of negligence. If deceased was incapable of being guilty of negligence, due to his age, the doctrine of last clear chance would be inapplicable as to him.

All of this clearly indicates that the case was presented and tried on the theory that the question of the child's contributory negligence was an issue in the trial. It is a time-honored rule that one who clearly and repeatedly invites error cannot complain of it on appeal for the first time, and is not allowed to raise points not raised at the trial. (*Drotleff* v. *Renshaw,* 34 Cal.2d 176, 185 [208 P.2d 969] ; *Colbert* v. *Borland,* 147 Cal.App.2d 704 [306 P.2d 53] ; *Butigan* v. *Yellow Cab. Co.,* 49 Cal.2d 652 [320 P.2d 500, 65 A.L.R.2d 1].)

 Next, plaintiffs complain because the trial court gave defendant's instructions relative to alleged contributory negligence of plaintiff parents, claiming there was no evidence justifying such instructions. (Citing 48 Cal.Jur.2d 480.)

The evidence shows that plaintiffs, who were both employed at different places, sought a baby-sitter for their three children during working hours, by means of an advertisement in the newspaper. Miss Todd replied and represented that she was

16 years old when in fact she was only 14, and stated that she was in high school when in fact she was in the ninth grade. She gave names of references, as having cared for their children. Plaintiffs interviewed the child but were unable to contact the references she gave. They entrusted this 14-year-old girl to take their three children each day across the known dangerous highway to buy ice cream and return. That she was negligent in her conduct in caring for the children under the circumstances related is apparent. ▆▆▆ Parents are chargeable with ordinary care in the protection of their minor children. ▆▆▆ The negligence of a caretaker, nurse or babysitter, employed by the parents, is imputed to them for the purpose of raising a defense to an action brought by the parents for the wrongful death of their child, where the child escapes from the custody of the agent of the parents. (*Springer v. Sodestrom*, 54 Cal.App.2d 704 [129 P.2d 499]; *Niemi v. Boston & Maine R.R.*, 87 N.H. 1 [175 A. 245]; *Courtell v. McEachen, supra*, 51 Cal.2d 448; *Fox v. Oakland Con. St. Ry.*, 118 Cal. 55 [50 P. 25, 62 Am.St.Rep. 216].) ▆▆▆ The question was a matter of fact for the determination of the jury. (*King v. Lennen*, 53 Cal.2d 340, 344 [348 P.2d 98].)

▆▆▆ The last question raised involves an instruction based upon Vehicle Code, section 21956, formerly Vehicle Code, section 564, to the effect that: "A roadway is that part of the highway which is improved, designed or ordinarily used for vehicular traffic. If a person walks on the roadway, the statute which was just read to you requires him to keep close to the left side facing oncoming traffic."

In *Catton v. Kerns*, 123 Cal.App. 94 [10 P.2d 1036], involving a similar instruction, it was held that this section applies to a pedestrian walking along the highway and not to one crossing it and the case was reversed. In that case, there was no evidence that appellants were or ever intended walking on the highway, other than to cross it. There, the question of the driver's negligence was a close one and this court determined that the erroneous instruction given might well have influenced the jury in reaching the verdict rendered. Here, we do have the baby-sitter and children proceeding down the highway in violation of that section, but it well appears that they had reached a place where they intended to cross the highway. It is difficult to see how a violation of this section could be held to be contributory negligence or a proximate cause of the death of deceased. However, the record shows that in his argument to the jury defendant's counsel stated that this

instruction was offered and given only for the purpose of showing Miss Todd's incompetency, unfitness, and the untrustworthiness of plaintiffs' servant in caring for the children, knowing it was a violation of the law to walk on the highway in the manner indicated and this fact bore on her credibility and qualification, and accordingly this fact should be considered by the jury only in this respect and with this limitation. The trial court gave no limitation to its application and defendant offered no such instruction. In his argument to the jury, counsel for defendant did state: ''Now, it is not important in terms of this action how they walked down the highway, in terms of the actual cause of the accident itself. I mention it, and I'm repeating it here only because it has reference to how believable Miss Todd is, how credible.''

It is true that in some cases evidence of individual acts tending to show negligence or incompetency is admissible for the purpose of showing that the employee was in fact unfit or incompetent. (*Worley* v. *Spreckels Bros. Com. Co.*, 163 Cal. 60, 70 [124 P. 697]; McBaine, California Evidence Manual, p. 230.) Assuming it was error to give the instruction, in view of the fact that counsel stated the limited purposes for which it was to be considered by the jury and in face of the entire evidence and instructions given, we feel that no prejudice was suffered by plaintiffs in this respect. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 22, 1960, and appellants' petition for a hearing by the Supreme Court was denied January 31, 1961. Peters, J., and Dooling, J., were of the opinion that the petition should be granted.