[Civ. No. 18964. Second Dist., Div. Three. Sept. 25, 1952.]

JAMES M. JOBE, Appellant, v. HAROLD LIVESTOCK COMMISSION COMPANY (a Corporation) et al., Respondents.

Edward Feldman for Appellant.

Bauder, Gilbert, Thompson & Kelly for Respondents.

SHINN, P. J.—At about 11 o'clock a. m., October 19, 1949, plaintiff James M. Jobe and his wife, Mary, were riding in an autoette driven by Mr. Jobe. An autoette is a small three wheel vehicle operated by batteries. They were proceeding east on Walnut Street in the Bellflower district of Los Angeles County. They reached the intersection of Clark Street where they stopped. They then proceeded into Clark Street until their vehicle came into collision with an automobile of Harold Stiefel, doing business as Harold Livestock Commission Company, driven by his employee, Stiefel, Jr., hereinafter called defendant. Walnut Street is 34 feet wide, Clark Street is 54 feet wide. There was a stop sign on Walnut at the intersection of Clark. The point of the collision was about 9 feet north of the south curb line of Walnut and 13 feet west of the east line of Clark Street. The car of defendant left skid marks 58 feet long before it reached the point of collision and 14 or 15 feet beyond. The autoette came to rest about 5 feet southwest of the northeast curb intersection. Mrs. Jobe met her death in the accident and Mr. Jobe was injured. In this action for damages the verdict and judgment were in favor of Stiefel, Sr., doing business as Harold Livestock Commission Company and Stiefel, Jr. Plaintiff appeals. The points on appeal are the following: Refusal of plaintiff's requested instructions (1) on the doctrine of last clear chance; (2) that violation of sections of the Vehicle Code constituted negligence as a matter of law.

Mr. Jobe, 74 years of age, testified that at the time of the impact he was traveling 4 or 5 miles an hour. He did not see defendant's car. Stiefel, Jr. testified that he was traveling north on Clark Street along the white line between the center line and the east curb between 25 and 35 miles an hour. The weather was clear. He first saw the autoette as it approached the center line of Clark Street. He immediately applied his brakes and veered to the right; he was about 75 feet from the autoette when he first saw it. It was going slowly at that time. The roadway was level and dry. From the time he had crossed Arkansas Street a block south of

Walnut he had been looking straight ahead. He did not see the autoette approach or enter the intersection. His brakes were in good condition. A police officer produced by plaintiff as an expert witness stated his opinion that a 1949 Buick (the Stiefel car), traveling on a dry level asphalt highway, which skidded 58 feet up to the point of impact, and 15 feet after the point of impact would have been traveling at 39.1 miles per hour; that at 25 miles per hour it could have been stopped in 56.7 feet and at about 30 miles per hour it could have been stopped in 75 feet. The foregoing is all the evidence that had any bearing upon the applicability of the doctrine of last clear chance. We do not believe the court was in error in refusing to instruct on that doctrine. This was one of the unfortunate, but rather common, intersection collisions in which neither driver was alert to observe traffic conditions and approaching vehicles. It was a reasonable conclusion that Stiefel, Jr. was negligent in failing to observe the autoette between the time it left the west curb line and the center line of Clark Street and that Mr. Jobe also was negligent. There was nothing that would have obstructed their views of the intersection.

■ A primary element of the doctrine of last clear chance is that the one against whom it is asserted had actual knowledge of the perilous situation of the one who claims the benefit of the doctrine. Plaintiff's argument upon the evidence, which he contends called for an instruction on the last clear chance doctrine, is based principally upon the expert testimony given by the officer. ■ His estimate of the speed of defendant's car at 39.1 miles per hour, based upon the length of the skid marks and condition of the highway, was a proper use of expert testimony and would have warranted the jury in finding that defendant was traveling at about that speed. Other opinions of the witness were offered in an attempt to prove how far away defendant was from the point of the accident at the time he first saw plaintiff's car. The theoretical distance was computed by taking the length of the skid marks, estimating the speed of the car, and adding the distance a car would travel in three-quarters of a second at the speed indicated by the skid marks. The sum would be the theoretical distance between defendant's car, when he realized he should stop, and the point of the accident. ■ The witness testified that three-quarters of a second is the "reaction time," or the average time, it takes all ages and classes of drivers to apply their brakes

after realizing they should do so. He did not explain the basis of this assumption of fact, nor whether it was based upon tests of drivers who knew or those who did not know they were under observation for the purpose of testing their reflex actions. He did testify, however, that he could not express any opinion as to defendant's "reaction time," without making tests. This was sufficient to have excluded the opinions of the witness which assumed a theoretical time within which defendant would have applied his brakes.

■ In order to warrant an instruction on the last clear chance doctrine there must have been substantial evidence of the following: (1) Plaintiff, as a result of his negligence, was in a position of danger from which he could not escape; (2) defendant had actual knowledge of plaintiff's presence and knew, or in the exercise of ordinary care should have known, plaintiff could not escape; (3) with such knowledge defendant, by the use of ordinary care, could have avoided the accident but failed to exercise such care.

There was evidence of plaintiff's negligence; he either did not look for approaching vehicles as he drove into the intersection or did not look carefully, and did not see defendant's car. There was evidence that defendant knew of plaintiff's hazardous position and it could have been inferred that he realized or should have realized plaintiff could not escape from it. Defendant made a determined effort to stop. He was not relying upon plaintiff's stopping or clearing the intersection. We shall assume this was sufficient to supply the second element.

■ We have narrowed our case down to the third question involved, namely, was there substantial evidence that defendant was far enough away from the point of the accident to have been able to avoid the collision after discovering that he should stop or turn aside, or, in other words, by reason of such distance did he have a last clear chance to avoid it in the exercise of ordinary care. We have to look to the evidence, direct and circumstantial, as to the location of plaintiff's car when defendant first saw it. The only direct evidence was that of defendant. The only circumstantial evidence was that defendant could have seen plaintiff's car when it entered the intersection. This was not sufficient. It was necessary that there be substantial evidence that defendant actually saw the car. ■ All the elements which go to make up the last clear chance doctrine must be affirmatively proved. (*Rodabaugh* v. *Tekus*, 39 Cal.2d 290, 294 [246

P.2d 663].) ■ There are situations in which actual knowledge will be inferred because it is the only reasonable inference to be drawn from the evidence, and in such situations it is held that the person charged had actual knowledge because he must have seen the other vehicle, or the pedestrian, as the case may be. *Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 645], was such a case. A car pulled out from the curb and remained stationary for about a minute with a stalled motor. The "must have seen" rule was applied. Plaintiff cites the Selinsky case but does not point out wherein it applies, nor how the rule can be applied to an intersection collision case between two moving vehicles in the absence of circumstantial evidence sufficient to prove not merely that the accused driver could have seen the other vehicle but that he could not have failed to see it. There was no such circumstantial evidence here. ■■ Defendant was on a highway protected by boulevard stop signs. He had a right to assume, initially, that vehicles upon intersecting streets would not be driven onto Clark Street in the way of vehicles on the latter street which were so close as to constitute an immediate hazard. (Veh. Code, § 552(a).) This was merely a circumstance which tended to excuse him from exercising the vigilance that would be expected of him if he had not been on a through highway, and to explain his failure to see the autoette as it entered the highway. The small size of the autoette was a fact to be considered. Among the many classes of motor vehicles, large and small, which are commonly encountered on the streets and highways, autoettes are but miniature or midget cars. They are unusual, and manifestly do not attract the same attention as would a larger car, nor is their presence to be as readily anticipated. People do not normally fail to take measures to avoid injury to themselves or others after they have discovered their danger, and have it within their power to escape from it. Finally, there was the fact that defendant did make a determined effort to stop and turn aside. All these considerations tended to disprove, rather than to prove, the claim that defendant wilfully or recklessly failed to use all available means to escape from the danger.

Plaintiff says that under the formula of his expert witness for computing the distance traveled by defendant's car after he realized he should stop, "the jury could have formed the conclusion that defendant Stiefel was a greater distance away from plaintiff's vehicle than he testified," that he saw

plaintiff's car enter the intersection, and therefore, "had a greater opportunity to avoid the accident and could have done so by exercising ordinary care." The argument merely points out that plaintiff's car could have been seen as it entered the intersection, which does not supply proof of actual knowledge of its presence. Moreover, the theory itself was nebulous, and even according to the witness was inapplicable to defendant, since it assumed the unknown factor of the speed of defendant's reflex actions. But in any event, the argument is unavailing. It only supposes an interval of time within which defendant would have traveled a theoretical distance before he normally would have applied his brakes, and is entirely consistent with the view that he applied them as quickly as he could within his supposed capabilities. Plaintiff has no other theory to support his argument that there was evidence from which the jury could have found that defendant had a last clear chance to avoid the accident. We are unable to discover any such evidence. In view of the fact that defendant did realize his danger and made a determined effort to stop, it would be wholly illogical and unreasonable for the jury to have found upon the circumstantial evidence that there was a considerable interval of time during which defendant realized the danger and made no effort to avoid the accident. ▮▮▮ Mere doubt as to the credibility of defendant or the accuracy of his estimate of distance would not amount to affirmative evidence of any material fact. An instruction on the doctrine of last clear chance would have been an invitation to the jury to speculate as to the existence of an essential fact of which there was no direct or circumstantial evidence.

Plaintiff cites our opinion in *Hopkins* v. *Carter*, 109 Cal. App.2d 912 [241 P.2d 1063], as support for his contention that a last clear chance instruction should have been given. Defendant's counsel say the case has caused "considerable bewilderment" among attorneys, themselves included. The misunderstanding of the import of our opinion on the part of counsel seems to be mutual. In that case the defendant observed each movement of the plaintiff's car and the jury would have been warranted in finding there was a degree of wilfulness in his increasing his speed instead of slowing down or stopping. For that reason refusal of the instruction was held to be prejudicial. Since the facts of that case bear no resemblance to those of the instant case, our former

holding neither supports the contentions of the plaintiff here, nor contravenes those of the defendant.

If the last clear chance rule has application to the present case it would apply in every intersection collision case where it could be said that either party, in the exercise of ordinary care, could have anticipated the accident in time to avoid it. The defense of contributory negligence would be done away with in such cases. Upon this point we refer to the opinion in *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, and the cases there cited. There was no error in refusing to give the last clear chance instruction.

 Plaintiff offered two general instructions to the effect that violation of any section of the Vehicle Code, which defendant had a duty to obey, would constitute actionable negligence, and that "an act or failure to act below the statutory standard is negligence *per se* or negligence as a matter of law." The court refused these instructions. An examination of the instructions given satisfies us that the jury was fully and fairly instructed and that it was not necessary to give the two instructions that were refused.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.