[Civ. No. 18646. First Dist., Div. One. Jan. 29, 1960.]

JOHN KOWALSKI, Respondent, v. SHELL CHEMICAL CORPORATION (a Corporation), et al., Appellants.

530

O'Connor, Moran, Cohn & Hall for Appellants.

Jack H. Werchick for Respondent.

BRAY, P. J.—Defendants appeal from a judgment in a personal injury action in favor of plaintiff for $6,500 entered after jury verdict.

## QUESTIONS PRESENTED

Alleged error in instructing (a) on last clear chance; (b) on right of way.

## EVIDENCE

Plaintiff's three-wheel motorcycle and defendant Shell Chemical Corporation's sedan, being driven by its employee, defendant Powell, collided in broad daylight in the intersection at Davis and Commercial Streets, San Francisco. Powell was southbound on Davis Street, which is a one-way street. Plaintiff was westbound on Commercial Street, which is 24 feet wide and also a one-way street. Powell knew that Commercial Street was one way from the east, so looked to his left as he approached the intersection. He could see partially into Commercial Street by looking between parked vehicles and the building at the northeast corner. There were vehicles parked along the curb and a panel truck double-parked near the intersection on the easterly side of Davis Street. He did not see plaintiff. Plaintiff also testified to the presence of the double-parked vehicle. There was no moving traffic in front of Powell. Just before his car reached the intersection Powell looked back at a truck to his right rear to determine if there

would be clearance for his car between the double-parked truck and the other truck if the latter passed Powell on his right. When he looked forward again, plaintiff's motorcycle was in front of him. He did not have his foot either on the brake or accelerator. He put his foot on the brake as quickly as he could.

Plaintiff testified that he was going about 15 miles an hour as he approached the intersection. At about 20 to 25 feet therefrom he looked to his right up Davis Street and by looking between the building and the parked cars saw the car which later struck him 100 feet from the intersection. Plaintiff did not stop at the intersection, believing that he could get through safely. He looked away and did not again look to his right until he was far enough in the intersection to be able to see up Davis Street. When he then looked to his right the Powell car was right on him. He could not judge its speed. Plaintiff was unable to do anything prior to the impact. He thought, however, that he was going to pass ahead of the Powell car.

The Powell car struck the rear portion of plaintiff's motorcycle. A police officer who investigated the accident testified that plaintiff's motorcycle had gone 27 feet into the intersection and Powell's car 11 feet into it at the point of impact. He found skid marks of 17 feet left by the car, and no skid marks of the motorcycle. Based on his investigations the officer opined that both vehicles were going 20 miles an hour prior to the accident. Johnson, a witness for defendants, said he saw the accident. He first observed the motorcycle entering the intersection at about 15 to 25 miles an hour. It went about 30 or 35 feet to the point of impact. He then saw the Powell car about 25 to 30 feet from the intersection going about 15 miles per hour. He did not see plaintiff look either to his right or left, although the witness was looking at him. He appeared to be attempting to turn left. The two vehicles came into the intersection and collided without changing speed.

(a) *Last Clear Chance.*

█ The doctrine of last clear chance is ordinarily inapplicable to intersection collisions where the act creating the peril occurs practically simultaneously with the happening of the accident and neither party can be fairly said to have had a chance to avoid the consequences. (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 294 [246 P.2d 663].) █ The elements of the last clear chance doctrine are laid down in *Brandelius* v.

*City & County of San Francisco,* 47 Cal.2d 729, 743 [306 P.2d 432] : ''The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.''

Applying these elements to the evidence in this case it clearly appears that the doctrine is not applicable. The first element could apply, namely, that plaintiff was in a position of danger, and by his own negligence became unable to escape by the use of ordinary care because until he was in the path of the oncoming car he was unaware of the danger. However, the other two elements are missing. There is no evidence that Powell knew until too late that plaintiff was in a position of danger or knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom. Powell testified that he did not see plaintiff until just before the collision.

Plaintiff by mathematical computations argues that Powell must have seen plaintiff before plaintiff entered the intersection and before Powell looked to his rear, thus affording Powell a last clear chance to avoid the collision. This conclusion is based primarily upon the following: Powell testified that from the time he first saw plaintiff until the impact he saw no indication that plaintiff was going to do anything to avoid the accident; the skid marks of Powell's car started 6 feet before the intersection and ran 11 feet into the intersection. By adding to the time it took Powell to go the 17 feet after he applied his brakes his reaction time, the total time is claimed to be such that Powell must have seen plaintiff when plaintiff was 25 feet from the intersection, the point where plaintiff claims that he saw the car 100 feet down Davis Street. Therefore, argues plaintiff, when Powell put on his brakes he realized plaintiff's danger and inability to escape from it, and to do this Powell must have seen plaintiff twice, once before he

entered the intersection and then again after Powell had looked forward after looking at the truck to his rear.

This involved calculation, however, overlooks the fact that as both parties agree, this was a blind corner because of the double-parked vehicle in Davis Street, and had both parties seen each other when plaintiff was 25 feet from the intersection they then necessarily lost sight of each other because of the double-parked vehicle. At that point there was nothing to indicate to Powell that plaintiff would continue on into a position of danger or that plaintiff was unaware of the danger which would confront him or that he could not avoid the danger. Had Powell then seen plaintiff Powell had the right to assume that plaintiff coming into the intersection from an alley would not drive into Davis Street in the way of his vehicle. (Veh. Code, § 553.)* So far as Powell was concerned the first time plaintiff was in a position from which he could not extricate himself by the use of ordinary care was when plaintiff was far enough into the intersection that the double-parked vehicle no longer obscured Powell's view of him when Powell looked forward. As said in *Jobe* v. *Harold Live-stock Com. Co.* (1952), 113 Cal.App.2d 269, 274 [247 P.2d 951], the last clear chance doctrine cannot "be applied to an intersection collision case between two moving vehicles in the absence of circumstantial evidence sufficient to prove not merely that the accused driver could have seen the other vehicle but that he could not have failed to see it." There was no such circumstantial evidence here. The giving of the doctrine instruction was an invitation to the jury to speculate as to the existence of an essential fact of which there was no direct or circumstantial evidence. To hold that the last clear chance was applicable here would mean that there could be no intersection collisions to which the doctrine would not apply, and would completely do away with the defense of contributory negligence in such cases. Here it is clear that the accident was caused by the fact that because of the parked vehicles the motorcycle suddenly appeared in front of the oncoming car.

 The Brandelius case emphasized that the time for the exercise by the defendant of any last clear chance to avoid an accident commences only after the defendant acquires both actual knowledge of the plaintiff's position of danger *and*

---

*This accident happened prior to the adoption of the new Vehicle Code in 1959. All references to the Vehicle Code herein are to the code as it existed in 1952, the time of the accident.

actual or constructive knowledge of the plaintiff's total inability to escape therefrom (47 Cal.2d 740, 741, 743) and not only must the chance which is afforded be a last chance but a clear chance. This implies that the defendant must have had more than a bare possible chance to avoid an unexpected peril created simultaneously with the happening of the accident by the negligence of the injured party so that neither party may be fairly said to thereafter have had a last clear chance to avoid the accident. (*Doran* v. *City & County of San Francisco* (1955), 44 Cal.2d 477, 487-488 [283 P.2d 1]; *Miller* v. *Atchison T. & S. F. Ry. Co.* (1958), 166 Cal.App.2d 160, 168 [332 P.2d 746].)

Plaintiff's contention that Powell must have seen plaintiff before the latter entered the intersection must be rejected for two reasons. First, as was said in *Bagwill* v. *Pacific Electric Ry. Co.* (1928), 90 Cal.App. 114, 121 [265 P. 517]: "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claims of last clear chance. The words means exactly as they indicate, namely, last *clear* chance, not possible chance." (Quoted with approval in *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d at p. 297, and in *Hickambottom* v. *Cooper Transp. Co.* (1958), 163 Cal.App.2d 489, 492-493 [329 P.2d 609].)

Here the length of the skid marks and the point of impact were the only exact determinations. There was no evidence of Powell's reaction time. The speeds and locations of the vehicles prior to the accident were only approximations. But even taking the facts most favorable to plaintiff, it does not appear that Powell must have seen plaintiff earlier than as asserted in his testimony, as contended by plaintiff. In *Jobe* v. *Harold Livestock Com. Co., supra,* 113 Cal.App.2d 269, involving an intersection collision, the plaintiff alleged error in the refusal to instruct on last clear chance. The plaintiff argued that under a formula of his expert witness (computing distance from estimated speed based on the length of the defendant's skid marks and adding distance traveled in average reaction time to apply brakes at the same speed) the jury could have found that the defendant observed the plaintiff at a farther distance than testified to by the defendant, thus providing the defendant with the last clear chance to avoid the accident. The court rejected this argument since,

first, there was no evidence of the defendant's particular reaction time. And the application of such formula was consistent with the view that the defendant applied his brakes as quickly as he could under his supposed capabilities. The formula only showed that the defendant *could* have seen the plaintiff at an earlier time, not that the defendant must have seen the plaintiff at such earlier time. Here, plaintiff employs a similar formula and his argument is open to the same criticisms. Moreover, Powell testified that plaintiff was right in front of him when he first observed plaintiff. There was no estimate of exact distance. It does not appear "physically impossible," as contended by plaintiff, that Powell could have reacted and braked if he saw plaintiff only once even in view of the approximations and hypothecations upon which plaintiff's argument is based.

The court in the Jobe case concluded: "In view of the fact that defendant did realize his danger and made a determined effort to stop, it would be wholly illogical and unreasonable for the jury to have found upon the circumstantial evidence that there was a considerable interval of time during which defendant realized the danger and made no effort to avoid the accident. Mere doubt as to the credibility of defendant or the accuracy of his estimate of distance would not amount to affirmative evidence of any material fact." (113 Cal.App. 2d at p. 275.) This language was relied upon in part in *Hickambottom* v. *Cooper Transp. Co., supra,* 163 Cal.App.2d 489. There, judgment for the plaintiff was reversed, the court prejudically erring in instructing on last clear chance. The defendant had less than two seconds within which to react and apply his brakes and swerve to the left to avoid an automobile. The defendant testified that he braked as soon as he saw the other automobile. The court cited the language quoted above in *Bagwill* v. *Pacific Electric Ry. Co., supra,* 90 Cal.App. 114, and the Jobe case, and held that there was no substantial evidence from which it could be reasonably inferred that the defendant saw the other automobile in time to have a clear chance to avoid the accident.

Plaintiff cites *Selinsky* v. *Olsen* (1951), 38 Cal.2d 102 [237 P.2d 645], for the proposition that defendant's actual knowledge of plaintiff may be reasonably inferred from the evidence. *Jobe* v. *Harold Livestock Com. Co., supra,* 113 Cal. App.2d at page 274, takes the view that actual knowledge may be inferred where it is a reasonable inference to be drawn from the evidence and relies upon the Selinsky case. In the

Selinsky case the defendant testified that he did not see the plaintiff's automobile stopped on a road until he was directly behind it. But other evidence showed that the defendant was looking ahead and that his view was unobstructed. Although under the evidence it appeared that the defendant "must have seen" the plaintiff, as pointed out in the Jobe case, the Selinsky opinion contented itself with merely saying: "It may be inferred therefrom that he saw plaintiff's [automobile]" and later, ". . . defendant could have seen plaintiff's car . . ." (38 Cal.2d at p. 105.) The present case does not present such a strong factual situation for drawing an inference of earlier knowledge as in the Selinsky case, and, under the other authorities discussed above, it would not appear that any reasonable inference of earlier knowledge could be drawn in this case.

Secondly, even assuming that Powell did see plaintiff before plaintiff entered the intersection, there is no evidence to indicate that plaintiff was either in a position of peril, or, if he was, that defendant knew this and further knew or should have known that plaintiff was unable to escape through the exercise of ordinary care as required by the Brandelius case, *supra*, 47 Cal.2d at page 743. Plaintiff was not in a position of danger until he arrived at a point at which he could no longer stop or slow down in time to avoid a collision. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d at p. 294; *Dalley* v. *Williams,* 73 Cal.App.2d 427, 435-436 [166 P.2d 595].) The fact that a defendant actually sees the plaintiff some considerable time before the accident, or at a time when either or both of them are a considerable distance away from the place of the accident, does not necessarily make the doctrine applicable. (*Dalley* v. *Williams, supra,* 73 Cal.App.2d at pp. 435-436, and cases cited therein.) Plaintiff does not indicate what evidence there is that plaintiff was in a position of danger prior to entering the intersection or that shows Powell was aware of plaintiff's alleged helplessness. Plaintiff does refer to testimony by Powell that from the first time he saw plaintiff, Powell never saw him do anything to avoid the accident. But this testimony referred to the time immediately prior to the impact when Powell said he first saw plaintiff.

There was evidence that plaintiff was going 15 to 25 miles an hour as he approached the intersection. Plaintiff testified that he looked to his right and thought he could get through the intersection ahead of Powell. The eyewitness, Johnson, did not see plaintiff look right or left. Construing this evidence most favorably to plaintiff, there is no basis for in-

ferring that prior to entering the intersection, plaintiff was in a position of danger from which he could not have escaped through the exercise of ordinary care, or that if plaintiff was in an inescapable position of danger that Powell should have known of this in the exercise of ordinary care.

Therefore the trial court erred in giving an instruction on last clear chance. Since the instruction may have influenced the jury in arriving at a verdict for plaintiff and since the jury might well have found plaintiff guilty of contributory negligence contributing proximately to his own injury, the error is prejudicial. (*Hickambottom* v. *Cooper Transp. Co.*, *supra*, 163 Cal.App.2d 489; *Mahnkey* v. *Bolger* (1950), 98 Cal.App.2d 628 [220 P.2d 824]; *Dalley* v. *Williams*, *supra*, 73 Cal.App.2d 427.)

 *Gulley* v. *Warren*, 174 Cal.App.2d 470 [345 P.2d 17], is not in point. There the evidence disclosed that the defendant saw the blinker lights of the plaintiff's truck while he was a quarter of a mile away from it and no reason why he should not have seen the plaintiff standing by it when he was at least 100 feet from the plaintiff. Obviously no such situation exists here. Nor is *Guyton* v. *City of Los Angeles*, 174 Cal.App.2d 354 [344 P.2d 910], applicable here. There the evidence justified a finding that the defendant had from 60 to 90 feet in which to alter his course after the child on a bicycle entered the roadway ahead of him. While the opinion states that this conclusion is based upon the physical evidence in "conjunction" with the use of a mathematical formula, it points out that these calculations were not " 'so nice' " as to be, as said in *Rodabaugh* v. *Tekus*, *supra*, 39 Cal.2d 290, 295, " '. . . unavailing to prove anything except the unity of the whole transaction' " nor of the type mentioned in *Bagwill* v. *Pacific Electric Ry. Co.*, *supra*, 90 Cal.App. 114, 121, when it said " 'the doctrine of last clear chance never meant a splitting of seconds when emergencies arise.' " Neither of these cases were intersection cases, and in both the calculations were not of the "nice" character of those in our case.

(b) *Right of Way.*

 The court instructed that Commercial Street was an alley. Defendants contend that sections 550, subdivision (a), and 553, Vehicle Code, and the instructions given based upon them, are contradictory. Moreover, they contend that a colloquy between the judge and the jurors after the jury had

returned to the courtroom for further instructions, shows that the jury was confused by these instructions, a contention which in view of the necessity for a new trial we need not discuss. Although the error in instructing on last clear chance alone requires a reversal, it is necessary for the benefit of the court on a new trial for us to consider the propriety of instructions on both sections 550, subdivision (a), and 553, Vehicle Code. Section 3 of the Municipal Code of the City and County of San Francisco defines ''alley'' as ''a street with a roadway less than 30 feet.'' Commercial Street is only 24 feet wide. The court instructed in the language of sections 550, subdivision (a), and 553, Vehicle Code, as they were in 1952, the time of the accident. Section 550, subdivision (a), provided that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. Section 553 provided that the driver of a vehicle about to enter or cross a highway from an alley as defined by local ordinance shall yield the right of way to all vehicles approaching on said highway. There is no contradiction between the sections when considered together. The plain import thereof is that ordinarily the driver of an automobile approaching an intersection must yield the right of way to a vehicle already in the intersection, and that the driver of a vehicle about to enter a highway from an alley must yield to all vehicles approaching on the highway. In *Gulley* v. *Daggett* (1947), 80 Cal.App.2d 784, 786 [182 P.2d 613], the court held that there was no contradiction between section 550 dealing with the right of way at intersections in general and section 552 relating to vehicles entering a ''through highway.'' No more is there any contradiction between section 550, subdivision (a), and section 553, which deals with the right of way when a vehicle enters a highway from an alley.

In view of our determination that the judgment must be reversed it becomes unnecessary for us to consider defendants' contention that plaintiff's attorney was guilty of prejudicial misconduct.

The judgment is reversed.

Tobriner, J., and Duniway, J., concurred.