[Civ. No. 24362. Second Dist., Div. Three. Nov. 18, 1960.]

ROBIN HICKAMBOTTOM, a Minor, etc., Appellant, v. COOPER TRANSPORTATION COMPANY, INC. (a Corporation) et al., Respondents.

Vaughn & Morrow for Appellant.

Hecker, Dunford & Kenealy and Orlan S. Friedman for Respondents.

SHINN, P. J.—Robin Hickambottom, by her guardian *ad litem*, maintains the present action against Robert Lee Whisler (called defendant) and Cooper Transportation Company, Inc., for the recovery of damages resulting from the alleged wrongful death of plaintiff's father, Grady Hickambottom, caused by the collision of two motor vehicles. Verdict and judgment were in favor of defendants and plaintiff appeals.

The grounds of appeal are (1) failure of the court to give plaintiff's instruction on the doctrine of last clear chance, (2) claimed prejudicial remarks of the court during the trial and (3) error in sustaining objections to evidence offered by plaintiff. We have concluded that the judgment is not vulnerable to attack upon any of the grounds urged.

Grady Hickambottom, traveling alone, was on his way from Pasadena to San Francisco, driving a sedan. About 3 a.m. he entered a service station at Tagus Ranch. Henry Cobb, who was on duty at the station, testified that the right rear tire of the car was flat; decedent discussed the purchase of a tire, was offered several different ones but did not make a purchase; his headlights were burning and a stop light came on when the brakes were applied, but his right tail light was not illuminated and Cobb did not see a light in the left tail light. He cautioned decedent against going onto the

highway with a flat tire. However, decedent proceeded north on the highway to a point about 2 miles south of Traver, where the accident occurred.

Highway 99 is a divided highway with two northbound and two southbound marked lanes, each about 10 feet wide. To the east there was improved shoulder about 10 feet wide. Decedent stopped his car with about 3 feet of its width in the east lane and the remainder upon the shoulder. It was at that point that it was struck in the rear by the equipment of defendants, traveling north. Defendants' equipment was 60 feet in length and consisted of a tractor and two trailers, each 20 feet in length. The total weight was 65,000 pounds. Both vehicles were demolished; Hickambottom was killed; the cab of the tractor was detached; Whisler was imprisoned in it for several hours and suffered severe injuries.

Whisler testified that he was 30 years of age; he had been driving trucks for 12 years and was familiar with the Cooper equipment. Before he left El Monte, he checked his brakes; 70 miles to the north at Grapevine he again checked the brakes before descending a steep grade, and found them to be in good condition. At Bakersfield he stopped for repair of a fuel line. He was traveling about 45 miles per hour in the right hand lane. Due to southbound traffic his headlights had been dimmed; they illuminated the highway for a distance of 150 feet; on high beam they would have illuminated it for 300 feet; he was not tired or sleepy and was observing the highway in front of him. He testified that he first saw the sedan when he was within 75 or 100 feet of it. He saw no light upon it. At first he did not realize that it was standing still, but he immediately applied his brakes and swerved to the left.

In a former trial judgment was in favor of plaintiff. The court had given an instruction on the last clear chance doctrine. On appeal this was held to have been error for the reason that there was no evidence as to the distance within which the defendant could have stopped his truck when traveling at a speed of 40 or 45 miles per hour or of the time required to change his course of travel from the right lane to the left lane so as to permit every portion of his truck to be clear of decedent's automobile. (*Hickambottom* v. *Cooper Transp. Co.*, 163 Cal.App.2d 489 [329 P.2d 609].) It was held that the evidence did not warrant the giving of the instruction. The judgment was reversed.

At the second trial Whisler testified as he had at the first

trial with respect to his distance from the sedan at the time he first saw it, namely, 75 or 100 feet. The evidence on the second trial was sufficient to establish three of the elements of the last clear chance doctrine, namely, decedent was guilty of negligence in stationing his car partly in the east lane and in driving without lights; his position of danger was one from which he could not have escaped in the exercise of ordinary care; Whisler saw the stationary car and realized, or in the exercise of ordinary care would have realized that decedent was in a position of danger from which he could not escape in the exercise of ordinary care. These factors being established, the crucial remaining question was whether Whisler, in the exercise of ordinary care, could have avoided the accident by stopping or turning aside and, if so, whether he failed to exercise ordinary care in the effort that he made.

When questioned by plaintiff's attorney under section 2055, Code of Civil Procedure, as to the time that elapsed after he saw the sedan, Whisler testified that he could not be sure. "It was a very short time, maybe a second or so or less; it could have been more. I can't be sure. It all happened so fast." He was requested to close his eyes and open them when he thought the same time had elapsed that he had had in which to stop his equipment after he applied his brakes. Whisler closed his eyes and opened them, and plaintiff's attorney, who was watching the second hand of a wall clock, stated that the elapsed time was three seconds. No one disputed him. Thereafter plaintiff's attorney assumed three seconds as the time in which Whisler could have acted.

In an attempt to furnish the evidence which was missing in the first trial plaintiff called an expert witness, who was examined and cross-examined at great length. His opinions to which we shall refer were all given upon the assumption that Whisler's reaction time was average and that the brakes on defendants' equipment had the efficiency prescribed by the Vehicle Code. (Veh. Code, §§ 26450-26454.) Upon factors established by the code, of speed and weight, the required braking efficiency was computed by the expert at 26.7 per cent. There was no evidence that defendants' equipment had a higher braking efficiency. It was therefore proper to assume an efficiency of 26.7 per cent, and no other, since it was to be presumed that the equipment complied with the code requirements. The witness testified that a vehicle weighing 65,000 pounds, traveling at 45 miles per hour, would travel 66 feet per second and that, therefore, in three seconds

*at constant speed* it would travel 198 feet. He also testified that at a speed of 45 miles per hour equipment with legal braking efficiency, weighing 65,000 pounds, could be stopped in 309.1 feet, which figure includes 49½ feet allowed for the average reaction time of the average individual under average conditions.

Thereafter much irrelevant testimony was given by the expert in his direct examination. Notwithstanding the absence of evidence of the efficiency of Whisler's brakes, other than that which was to be presumed, the witness testified that 100 per cent efficiency is impossible, but 75 per cent is possible. At 75 per cent efficiency the equipment could be stopped in 90 feet, and at 50 per cent efficiency in 135 feet, plus the distance traveled in reaction time and a slight addition of the distance traveled until the brakes would take hold after application of pressure. The witness also stated what the stopping distances would be at 40 miles per hour with a theoretical braking efficiency of 100 per cent, 75 per cent and 50 per cent. The court expressed the opinion that the computations based upon theoretical braking efficiency were immaterial in the absence of evidence of the actual efficiency of Whisler's brakes and questioned counsel whether he expected to show their degree of efficiency. Counsel stated that he expected to prove their degree of efficiency. Whisler was then called by plaintiff and testified only that his brakes were in good condition.

All the testimony of the expert as to stopping distances with braking efficiency other than that required by the code was irrelevant and immaterial and should have been stricken on motion, had one been made.

 It is upon what might have happened under various unproved and purely hypothetical conditions that plaintiff seeks to apply the last clear chance doctrine. But the doctrine must be based upon what probably did happen under proved conditions rather than upon mere supposition as to what could or might have happened under materially different conditions.

 During the trial plaintiff's attorney maintained, and he still maintains, there was evidence that Whisler had 198 feet in which to stop his equipment. Consistently ignored is the fact that only at a constant speed of 66 feet per second, with no effort to slow down, would a vehicle travel 198 feet in three seconds. Moreover, the assumption that Whisler had three seconds in which to act is based upon nothing but the result of the wholly unreliable experiment consisting of

having him close and open his eyes. It is apparent that the experiment could produce nothing of value in the way of evidence. It was not reasonable to assume that in the emergency in which Whisler was required to act, in order to save his life, he could have been conscious of the time that elapsed, whether one, two or three seconds, and yet plaintiff relies upon this experiment as evidence that facts might have existed to the contrary of the only facts that were established by satisfactory evidence.

Although there was no direct or circumstantial evidence that Whisler saw the sedan from a greater distance than 75 to 100 feet and no evidence that his lights were not on low beam, it is even argued that with his lights on high beam he could have seen the sedan from a distance of 300 feet. We are asked to consider the evidence that with braking efficiency of 75 per cent the equipment could have been stopped in 90 feet and at 50 per cent efficiency in 135 feet. These arguments evidence a misconception of the last clear chance doctrine. The expert testimony upon which they are predicated was not relevant to the issues.

In *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, 275 [247 P.2d 951], in which we held the doctrine of last clear chance inapplicable, we said: ''In view of the fact that defendant did realize his danger and made a determined effort to stop, it would be wholly illogical and unreasonable for the jury to have found upon the circumstantial evidence that there was a considerable interval of time during which defendant realized the danger and made no effort to avoid the accident. Mere doubt as to the credibility of defendant or the accuracy of his estimate of distance would not amount to affirmative evidence of any material fact. An instruction on the doctrine of last clear chance would have been an invitation to the jury to speculate as to the existence of an essential fact of which there was no direct or circumstantial evidence.'' There was no evidence that Whisler failed in any way, or to any extent, to make the utmost effort to avoid the accident after he realized the danger both to the occupant of the sedan and to himself.

In *Jobe* plaintiff was relying upon expert testimony of the type relied upon in the present case and of that testimony we said: ''Plaintiff says that under the formula of his expert witness for computing the distance traveled by defendant's car after he realized he should stop, 'the jury could have formed the conclusion that defendant Stiefel was a greater

distance away from plaintiff's vehicle than he testified,' that he saw plaintiff's car enter the intersection, and therefore, 'had a greater opportunity to avoid the accident and could have done so by exercising ordinary care.' The argument merely points out that plaintiff's car could have been seen as it entered the intersection, which does not supply proof of actual knowledge of its presence. Moreover, the theory itself was nebulous, and even according to the witness was inapplicable to defendant, since it assumed the unknown factor of the speed of defendant's reflex actions. But in any event, the argument is unavailing. It only supposes an interval of time within which defendant would have traveled a theoretical distance before he normally would have applied his brakes, and is entirely consistent with the view that he applied them as quickly as he could within his supposed capabilities. Plaintiff has no other theory to support his argument that there was evidence from which the jury could have found that defendant had a last clear chance to avoid the accident.'' (Pp. 274-275.) In the present case refusal of plaintiff's requested instruction was not error.

■ We find no merit in the contention that plaintiff suffered prejudice by reason of comments of the court during the trial. One instance of Vaughn's conduct and the comment of the court is as follows: ''MR. VAUGHN: May I say for the record that it was certainly not my intention at any point to be contemptuous of the Court and I was not consciously aware of having been contemptuous of the Court and if I was so I apologize for such. May I further say for the record that I feel that anything that was done on my part was prompted by my attempt to protect my record in this case and not by any design to impress or convey any impression to the jury or to the Judge with reference to any particular matter then pending, and that if my conduct was that of sulking or anything of that sort it was my unconscious manner and in the heat of the situation. However, I feel that—that is all that I have to say. THE COURT: I can overlook the heat generated in the course of a trial, but when counsel repeatedly violates the Court's instructions, particularly when after being admonished to silence, and retain your seat, counsel assumes a pose in front of the jury of anguish and frustration, that I cannot overlook and you are guilty of that.'' It is said in plaintiff's closing brief: ''Any perusal of the record herein makes clear the fact that the trial of this case was a difficult one for the court and all parties. Tempers were apparently

very short, and the conduct of counsel and the court was not in keeping with the known professional standards of either." We can agree with this statement insofar as it applies to the conduct of counsel. The patience of the court was sorely tried. It is also said in the opening brief: "The conduct of the court in the trial of this matter had the effect of frustrating and limiting the attempts of the plaintiff to present a coherent case." We cannot agree with this statement. The very opposite of it is true. The purpose of the court was to see that proper evidence was elicited and that the trial be conducted with decorum and in a manner that would not reflect discredit on the court and counsel in the minds of the jurors and spectators. That is one of the duties of a judge who is presiding in a trial. There was constant bickering between counsel and constant argument by plaintiff's counsel after the court had made its ruling. There were frequent conferences at the bench. Admonitions by the court in order to prevent misconduct of counsel were persistently disregarded. In chambers the court had adjudged both counsel to be in contempt, and imposed a fine of $25 upon counsel for plaintiff and $15 upon counsel for defendants. There were sufficient aggravating occurrences that required action by the court to preserve at least a semblance of order to justify the extreme measures that were taken. Although the present effort to place all the blame upon the court is an invitation to discuss the incidents in detail, this is unnecessary, and it is just as well that we look no deeper into the unseemly behavior which called for the court's intervention.

 It is contended that plaintiff's attorney was prevented by the court from making a proper argument to the jury and that the remarks of the court during the argument were highly prejudicial. There is no merit in this contention. The matter is presented on a transcript of a portion of the oral proceedings. Plaintiff's attorney was evidently arguing the doctrine of last clear chance to the jury. The portion of the oral proceedings in that connection commences with a statement of the attorney as to what the court's instruction would be. The court admonished him not to discuss the last clear chance doctrine since it had been made clear to counsel in chambers that an instruction on the doctrine would not be given. The attorney was using a diagram on the blackboard which contained figures illustrating the testimony of the expert which we have previously mentioned. The court pointed out that they were the basis of plaintiff's argument for the last clear

chance doctrine. The attorney replied that he was only arguing that if defendant's lights were on high beam he had 300 feet in which to stop his equipment. Disregarding the court's admonition the attorney insisted that argument on the assumed fact that Whisler would have had 300 feet in which to stop his car if his lights had been on high beam was not related to the last clear chance doctrine. The court stated that the argument was in conflict with the ruling that a last clear chance instruction would not be given. The attorney continued to argue with the court. The court stated that the attorney could discuss the matter of lights all he chose as long as he did not include in his argument the times and distances shown on the chart which had been placed there in support of the contention that Whisler had a last clear chance. Nevertheless the attorney then argued that at 45 miles per hour in three seconds Whisler had 198 feet in which to stop his car. He read from the transcript a question propounded to Whisler which ended ''Was there in your estimation sufficient space for you to have pulled around that vehicle?'' and when interrupted by the court, insisted that he was only discussing the question of negligence. The court finally said ''I am not going to argue the matter with you. Proceed.'' It is clear that the attorney persisted in arguments that were applicable only to the last clear chance doctrine and that he had no intention of abandoning that line of argument. He realized that plaintiff could not recover unless on the doctrine of last clear chance, since she depended upon evidence of Hickambottom's negligence as one of the elements to be established in order to render that doctrine applicable. The attitude of the attorney toward the court was disrespectful and his persistent argument was improper. We do not find in the incident any reason for holding that the action of the court was improper or prejudicial.

We have examined the five specifications of error in sustaining objections to questions propounded by plaintiff's attorney. None of the rulings excluded evidence that would have had any important bearing upon the issues in the case. The rulings were not erroneous. The case was fairly tried.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 10, 1961.