[Civ. No. 8099. Fourth Dist., Div. Two. Apr. 12, 1967.]

FRED UNGEFUG et al., Plaintiffs and Appellants, v. JERRY JOSEPH D'AMBROSIA et al., Defendants and Respondents.

Wendell V. Harris for Plaintiffs and Appellants.

King & Mussel and Stanley W. Mussell, Jr., for Defendants and Respondents.

TAMURA, J.—This is an appeal from a judgment for defendant in a wrongful death action brought by the surviving husband and daughter of Elizabeth Ungefug who was fatally injured when struck by an automobile.

The accident occurred at approximately 9 p.m. on March 28, 1963, at the intersection of Foothill Boulevard and Palmetto Avenue in Fontana. Foothill has two westbound and two eastbound lanes with a fifth lane at the intersection for left turns. The posted speed limit for westbound traffic was 45 miles-per-hour. Visibility was good and the pavement was dry.

Defendant D'Ambrosia gave the following account of the accident. He was driving westbound on Foothill in the lane nearest the curb, traveling at 35 miles per hour or less. As he approached the intersection a second westbound vehicle pulled alongside him in the inside lane and passed him by a half-car's length. The vehicles were in this relative position as they entered the easterly crosswalk of the intersection. When he first noticed decedent she appeared to be in mid-air between the two vehicles; simultaneously he felt an impact. He applied his brakes sharply, veered to the right and came to a stop along the curb. His vehicle left about 54 feet of skid-marks. As he alighted from his vehicle, he heard voices of unidentified persons who were running towards the scene saying either "It is hit and run" or "Is it hit and run?" He replied, "No, I hit her." The other vehicle failed to stop and was never identified.

The ambulance driver who removed decedent to the hospital testified that minutes prior to the accident he was in the parking lot of a restaurant located at the southwest corner of the intersection and saw decedent staggering across Foothill from north to south causing drivers to come to a screeching halt to avoid striking her. After she crossed the street, he observed decedent enter the parking lot, bump into a parked car and into his ambulance, fall and then enter a nearby supermarket. He then left the parking lot and returned to his office. Within minutes he received an emergency call to proceed to the intersection, a distance of approximately three miles. Upon arrival, as he was preparing to lift decedent on the gurney, he heard somebody say the victim had been hit twice, once by another car that failed to stop.

When she was struck, decedent was apparently crossing Foothill from south to north carrying a bag of groceries. A broken wine bottle was found near the crosswalk and a wet substance which smelled like wine was found on the exterior of defendant's vehicle.

Plaintiffs assign as error four instances in which the court admitted evidence over objections.

Plaintiffs contend that the ambulance driver's testimony describing decedent's earlier crossing of Foothill, including his testimony of vehicles coming to a screeching and disorderly halt as she crossed should have been excluded as being too remote and immaterial. The contention is without merit. ■ Evidence of the actions and conduct of a party just before the accident occurs is admissible as indicative of his acts and conduct at the time of the accident provided too long a period has not elapsed. (*Mathews* v. *Dudley,* 212 Cal. 58, 61 [297 P. 544]; *Hughes* v. *Hartman,* 206 Cal. 199, 204-205 [273 P. 560]; *Ritchey* v. *Watson,* 204 Cal. 387, 390 [268 P. 345]; *Larson* v. *Solbakken,* 221 Cal.App.2d 410, 421 [34 Cal. Rptr. 450]; *Jennings* v. *Arata,* 83 Cal.App.2d 143, 146 [188 P.2d 298].) The question of remoteness is addressed to the sound discretion of the trial court. (*Mathews* v. *Dudley, supra; Jennings* v. *Arata, supra; Traynor* v. *McGilvray,* 54 Cal.App. 31, 33-34 [200 P. 1056].) ■ In the instant case, in addition to describing decedent's crossing and her subsequent conduct, the ambulance driver testified that in his opinion she was intoxicated. His testimony would thus permit an inference that in re-crossing the street minutes later, decedent was in the same intoxicated condition, and, therefore, unable to exercise the degree of care required for her own safety.

 Plaintiffs next assign as error the admission of the testimony of the investigating officer who, on cross-examination, expressed an opinion concerning the speed of defendant's vehicle based upon the length of skidmarks. Plaintiffs had called the officer as their witness and had introduced his testimony concerning reaction time and braking distances by reference to a chart published by the California Highway Patrol. On cross-examination defense counsel, without objection, elicited testimony from the officer that at a speed of 35 miles per hour the skidmarks would be 67 feet long and that defendant's vehicle left only 54 feet of skidmarks. He then asked the officer, ''That conclusively means, sir, does it not, that my driver in this case entered the intersection at some speed below 35 miles per hour, doesn't it?'' Plaintiffs' objection on the ground that the answer called for a conclusion was overruled and the officer answered, ''Yes, sir.'' Thereafter on redirect examination plaintiff's counsel brought out the fact that the officer's testimony was based upon the chart and that he had not taken into account the fact that the last 9 feet of the skidmarks left by defendant's vehicle were against the curb. While the word ''conclusively'' may have been objectionable, it was apparent that the officer was merely testifying in the abstract from the chart. An objection made on the ground of lack of a proper foundation may have been well taken. A qualified expert may express an opinion as to the speed of a vehicle from the length of skidmarks taking into account the condition of the pavement, make of the vehicle, its condition, and other relevant factors. (*Linde* v. *Emmick*, 16 Cal.App.2d 676, 685 [61 P.2d 338]; *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, 272 [247 P.2d 951]; see *Hoffman* v. *Slocum*, 219 Cal.App.2d 100, 104 [32 Cal.Rptr 635].) The record in the instant case raises serious doubts whether the officer had been properly qualified as such an expert. An officer's opinion as to the speed of a vehicle from the length of skidmarks merely by reference to a chart has been held to be inadmissible. (*Gray* v. *Turner*, 245 Miss. 65 [145 So.2d 470, 472].) In the instant case, however, the officer was permitted to testify, without objection, by reference to the chart and the objection was not interposed on the ground of a lack of proper foundation. The court's ruling was thus, at most, a nonprejudicial error. (See *Hoffman* v. *Slocum, supra,* p. 105.)

Plaintiffs next assign as error the admission of the testi-

mony of the ambulance driver that he heard someone say that another car had struck the decedent. The colloquy of court and counsel at this juncture of the trial was as follows:

"Q (By Mr. King) At the time that this statement was made, did you observe the people who were surrounding you with reference to their state of behavior, excitement and otherwise?

A Yes. There were people all around.

Q And will you tell us what the people's mental state appeared to be from the standpoint of calmness or excitement?

MR. HARRIS: Object to that as incompetent, irrelevant, and immaterial.

THE COURT: That is necessary under this case I just gave him.

MR. KING: I got to prove the guy was excited.

MR. HARRIS: Don't tell the jury.

THE COURT: Do you understand the question?

THE WITNESS: I am not sure.

MR. KING: Well, Judge, I can never prove the identity of the person who made the statement.

THE COURT: I understand that. I am not asking that. But he doesn't understand your question.

MR. KING: I don't blame him.

THE COURT: Did a condition of excitement prevail at that scene at that time?

THE WITNESS: Yes, sir.

THE COURT: All right. You can ask what he heard now.

Q (By Mr. King) Now, would you tell us what you heard said?

MR. HARRIS: If the Court please, we will make the same objection. It is hearsay.

THE COURT: I understand. The objection is overruled.

Q (By Mr. King) What did you hear said?

A As I set the flat down and we started to pick her up, I heard someone make the statement that she had been hit twice, by another car that did not stop—that didn't stop.

MR. HARRIS: Your Honor, we will move to strike . . ."

█ A spontaneous declaration of a participant or bystander relating to an event he has witnessed, made while still under the stress of excitement from observing it, is admissible as an exception to the hearsay rule. (*Showalter* v. *Western Pacific R.R. Co.*, 16 Cal.2d 460, 468 [106 P.2d 895]; *Lane* v. *Pacific Greyhound Lines*, 26 Cal.2d 575, 581-582 [160 P.2d 21]; *Foster* v. *Pestana*, 77 Cal.App.2d 885, 889 [177 P.2d

54]; *Southers* v. *Savage*, 191 Cal.App.2d 100, 106-107 [12 Cal.Rptr. 470].) Professor Wigmore's test for determining the admissibility of such declarations was approved and summarized in *Showalter* v. *Western Pacific R.R. Co., supra*, at p. 468 as follows: "The basis for this circumstantial probability of trustworthiness is 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' To render them admissible it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, *i.e.*, while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstances of the occurrence preceding it. (Wigmore on Evidence [2d ed.], § 1750.)" The new Evidence Code codifies the modern rule by making admissible, as an exception to the hearsay rule, statements which "(a) Purports to narrate, describe or explain an act, condition or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240; Witkin, Cal. Evidence (2d ed. 1966) § 544, pp. 516-518.)

In determining the existence of the necessary elements of admissibility, some discretion is necessarily vested in the trial court. (*Showalter* v. *Western Pacific R.R. Co., supra*, 16 Cal.2d 460, 469; *Francis* v. *Sauve*, 222 Cal.App.2d 102, 109 [34 Cal.Rptr. 754]; *Wiley* v. *Easter*, 203 Cal.App.2d 845, 851 [21 Cal.Rptr. 905].) This is particularly true respecting the element that the declaration be made before there had been time to fabricate; that is, whether the declarant was still under the emotional stress of having observed the occurrence to which his declaration relates. (6 Wigmore on Evidence (3d ed.) § 1750, p. 154. See, however, *Potter* v. *Baker*, 162 Ohio St. 488 [124 N.E.2d 140, 144, 53 A.L.R.2d 1234].)

Although *Showalter* v. *Western Pacific R.R. Co., supra*, does not expressly mention it as a necessary ingredient to qualify an utterance as an admissible, spontaneous statement, the rule presupposes the fact that declarant witnesses the event to which his utterance relates. Thus the new Evidence Code specifically refers to declarations relating to an event "perceived by the declarant" made while under the

"stress of excitement caused by such perception." (Evid. Code, § 1240.) It must, therefore, appear "in some way, at least, and with some degree of persuasive force" that the declarant was a witness to the event to which his utterance relates. (Note, 127 A.L.R. 1030, 20 Am.Jur. Evidence, § 674, pp. 568-570.) Although this does not require direct proof that the declarant actually witnessed the event and a persuasive inference that he did is sufficient, the fact that the declarant was a percipient witness should not be purely a matter of speculation or conjecture. (*Beck* v. *Dye*, 200 Wash. 1 [92 P.2d 1113, 1117, 127 A.L.R. 1022]; *Potter* v. *Baker, supra*; *Coats* v. *Montgomery Ward & Co.*, 133 W.Va. 455 [57 S.E.2d 265]; *Watson* v. *State of Alaska*, 387 P.2d 289, 291.)

In the instant case, defendant failed to show except by the remotest inference, conjecture or speculation that the one who made the statement saw the accident. There is no evidence that there were eyewitnesses to the accident or that there were others in the immediate vicinity of the scene of its occurrence. Not only was the declarant unidentified, there was no evidence that the ambulance driver even saw him or her. Declarant may have been merely repeating what others, including defendant, might have said. Moreover, the "excitement" which prevailed at the scene when the ambulance arrived may have been engendered by people seeing the decedent lying on the pavement rather than from having observed the accident. (See *Potter* v. *Baker, supra*.) In our opinion the inference, if any, that the declarant actually witnessed the accident is not persuasive in the instant case. It was therefore error to admit the testimony of the ambulance driver that he heard someone in the crowd say that another car struck decedent.

Plaintiffs next contend that the court erred in permitting defendant to testify that he did not receive a traffic citation as a result of the accident. The record reflects that at the close of third day of trial, a juror sent a note to the judge inquiring whether defendant received a traffic citation. The court conferred with counsel in chambers and over plaintiffs' objection ruled that it would permit defendant to answer the inquiry rather than have the jury speculate. Defendant's counsel thereafter was permitted to ask defendant, "Mr. D'Ambrosia, following this accident were you at any time issued a citation relative to any of the aspects of the accident?" to which defendant answered, "No, sir, I was not." On their motion for a new trial; plaintiffs introduced an affidavit of the juror

who submitted the inquiry stating that the question was in the minds of all of the jurors at the time the note was transmitted to the judge.

 The fact that an arrest had been made or that criminal proceedings are pending is inadmissible in a civil action. (*Burbank* v. *McIntyre,* 135 Cal.App. 482, 486 [27 P.2d 400]; *Mooren* v. *King,* 182 Cal.App.2d 546, 551 [6 Cal.Rptr. 362]; *Laursen* v. *Tidewater Assoc. Oil Co.,* 123 Cal.App.2d 813, 816 [268 P.2d 104]; *Thornsbury* v. *Thornsbury,* 147 W.Va. 771 [131 S.E.2d 713, 722]; *Allen* v. *Ellis,* 191 Kan. 311 [380 P.2d 408, 412]; *Anderson* v. *Saunders,* 16 Wis.2d 55 [113 N.W.2d 831].) In *Rednall* v. *Thompson,* 108 Cal.App.2d 662, 665-666 [139 P.2d 693], it was held that the trial court properly sustained an objection to a question propounded to the defendant under Code of Civil Procedure, section 2055, "Did they give you a ticket that night?" Even a forfeiture of bail is inadmissible'as an admission against interest. (*Bradbeer* v. *Scott,* 193 Cal.App.2d 575, 579 [14 Cal.Rptr. 458]; *Cope* v. *Goble,* 39 Cal.App.2d 448, 456-457 [103 P.2d 598]; *Burbank* v. *McIntyre, supra.*)

The question remains whether the erroneous admission of the testimony of the ambulance driver relating to a declaration by a bystander and the testimony of the defendant that he had received no traffic citation require reversal.

Defendant contends that the evidence of decedent's contributory negligence was so overwhelming that this court must assume that the verdict was the result of an implied finding of contributory negligence. The evidence on the issue of contributory negligence is, however, in conflict. No witness testified to the impact except defendant who only saw decedent an instant before impact. A box boy from the supermarket testified that he heard a loud noise, looked up and saw what appeared to him to be a bag of groceries in mid-air. No witness testified to the manner in which decedent last crossed Foothill Boulevard. Although the ambulance driver testified to decedent's behavior minutes before the accident and expressed the opinion that she was drunk, a clerk in the supermarket testified that she appeared sober to him. Several witnesses testified they had observed decedent cross the same intersection a number of times in the past and that each time she crossed with proper caution. The fact, if it be a fact, that decedent was intoxicated did not establish contributory negligence as a matter of law. (*Simon* v. *City & County of San Francisco,* 79 Cal.App.2d 590, 602 [180 P.2d 393]; *Simmer*

v. *City & County of San Francisco*, 116 Cal.App.2d 724, 728 [254 P.2d 185]; *Kumelauskas* v. *Cozzi*, 191 Cal.App.2d 572, 577 [12 Cal.Rptr. 843]; see also *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818-819 [155 P.2d 826].)

 The defense was based in large part on the theory that another car struck decedent. There was, however, no direct testimony of any eyewitness of another car except the testimony of defendant. In these circumstances the erroneously admitted hearsay testimony of the ambulance driver was prejudicial. (See *Buchanan* v. *Nye*, 128 Cal.App.2d 582, 587 [275 P.2d 767].)

 Finally, the fact that the jury expressed its interest in ascertaining whether defendant received a traffic citation is a clear indication that that evidence was significant in the minds of the jurors.

From a review of the entire record including the evidence, it is our opinion that there is a reasonable probability that a result more favorable to plaintiffs would have resulted had the errors not occurred. (*Hook* v. *Point Montara Fire Protection Dist.*, 213 Cal.App.2d 96, 106-107 [28 Cal.Rptr. 560]; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed.

McCabe, P. J., and Kerrigan, J., concurred.