[Civ. No. 37202. Second Dist., Div. Five. July 21, 1971.]

CHERYL LYNN KELLEY, a Minor, etc., Plaintiff and Respondent, v. ROBERT W. VON KUZNICK et al., Defendants and Appellants.

## COUNSEL

Early, Maslach, Foran & Williams and Tom Hoffman for Defendants and Appellants.

Pollock, Pollock, Fay & Baum and David B. Baum for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—On August 14, 1964, defendant Robert W. Von Kuznick was driving an automobile owned by his employer defendant Arrow Chevrolet along a highway in New Mexico. In the car with him were his wife Fern and her daughter by a prior marriage, Cheryl Lynn Kelley, the plaintiff. They were returning from a Colorado vacation to their home in South Gate, California. The employer's place of business was in California. New Mexico's only concern with this litigation is that its highway engineers designed the 45 degree curve which Von Kuznick failed to negotiate at a speed between 70 and 80 miles per hour. The car overturned and Fern was killed. Cheryl Lynn, by her natural father as guardian ad litem, sued for her mother's wrongful death. A jury awarded her $35,000 against Von Kuznick and $5,000 against Arrow Chevrolet.[1] Both defendants appeal.

---

[1]There are several puzzling aspects with respect to the judgment against Arrow Chevrolet. None is raised on appeal and we therefore note them only for the record: 1. Plaintiff proceeded against Arrow on two theories, namely that Von Kuznick was driving the car in the course and scope of his employment with Arrow and that Arrow was the owner of the car. With respect to the first theory, a special verdict in Arrow's favor precluded any recovery on it. With respect to the second theory, no judgment against Arrow based on wilful misconduct should have been

There are three claims of error: 1. that the trial court erroneously refused to instruct the jury on the standard of care owed to guests under the New Mexico guest statute, which standard is claimed to be more lenient to hosts than California's; 2. that by any standard the evidence does not support a finding of liability; and 3. that it was prejudicial error for the court to instruct the jury on simple negligence.

## I.

Whether or not the New Mexico guest statute gives defendants greater latitude with respect to indifference toward the physical welfare of their guests, than California's, is a debatable point.[2] We assume for present purposes that it does. Nevertheless we have come to the conclusion that under applicable conflict of law principles, the trial court properly instructed the jury on California law.[3]

After testing the water in two earlier decisions, *Emery* v. *Emery*, 45 Cal.2d 421, 428 [289 P.2d 218] and *Grant* v. *McAuliffe*, 41 Cal.2d 859 [264 P.2d 944, 42 A.L.R.2d 1162], our Supreme Court in *Reich* v. *Purcell*, 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727], decisively aban-

---

rendered. (*Weber* v. *Pinyan*, 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407].) It was not until the 1967 amendment to section 17150 of the Vehicle Code—clearly inapplicable to this case—that owners became liable for the wilful misconduct of their permittees. 2. Thus, while Arrow probably should not have been held liable on a wilful misconduct theory, if liable the verdict and judgment should have been in the sum of $10,000, the statutory amount having been raised to that figure by the 1963 amendment to section 17151. (Stats. 1963, ch. 403, p. 1211, § 1.) The verdict was, however, in the sum of $5,000, a figure not justified by the law or the court's instructions.

[2]It is not difficult to find language in New Mexico cases which can be relied on to support the claim that the New Mexico statute makes certain conduct immune which a California court might call wilful. Thus in *Carpenter* v. *Yates*, 58 N.M. 513, 517 [273 P.2d 373], the court, following previous decisions, described the state of mind necessary for liability under the guest statute as "an utter irresponsibility on the part of defendant or of a conscious abandonment of any consideration for the safety of passengers;" it went on to say: "as indicated in State v. Clarkson, supra [58 N.M. 56, 265 P.2d 670], there is a close alignment between the state of mind required by this statute and a state of mind sufficient to convict for involuntary manslaughter for a death resulting from the operation of an automobile." On the other hand the New Mexico courts have held that inasmuch as the New Mexico statute was adopted verbatim from the Connecticut guest statute, it is presumed that the New Mexico Legislature also adopted prior construction and interpretation of the Connecticut statute by the highest court of that state. Our study of Connecticut decisions antedating New Mexico's adoption of the Connecticut statute, does not convince us that the standard of care owed to a guest in Connecticut was really as lax as the above quote would indicate. (See, for example, *Vanderkruik* v. *Mitchell* 118 Conn. 625, 628, 630 [173 A. 900]; *Maher* v. *Fahy*, 112 Conn. 76, 78-79 [151 A. 318]; *Bordonaro* v. *Senk*, 109 Conn. 428, 430-431 [147 A. 136].)

[3]Except as indicated above, the instructions are not otherwise criticized.

doned the "place of the wrong" test as the exclusive one, regardless of the issue involved.

As the court said in *Reich* "the forum can only apply its own law" and when it chooses to apply foreign law to a particular situation, it is not enforcing a foreign right "but choosing a foreign rule of decision as an appropriate one to apply to the case before it." (*Reich v. Purcell, supra,* 67 Cal.2d at p. 553.) In the case at bar California, of course, is the forum state. (Cf. *Schneider v. Schimmels,* 256 Cal.App.2d 366, 373 [64 Cal. Rptr. 273].) As the forum state California, again to quote *Reich,* "must consider all of the foreign and domestic elements and interests involved in this case to determine the rule applicable."

It is hard to isolate any legitimate New Mexico interest that may be involved here. The parties reside and do business in California, the trip began and ended here and New Mexico's highway system provided merely a passage between points in other states. To be sure, New Mexico had enacted a guest statute which we have assumed permits a greater departure from the rules governing negligence actions, than does California's, but any guest statute is merely a resolution between competing policies. The first policy is that motorists should use a state's highway with care and circumspection. The second is, of course, that which has motivated many state legislatures to absolve motorists from their duty to use ordinary care toward "guests." ▋ In California this policy is said to be twofold: "The primary policy underlying the guest statute is to prevent recovery for ordinary negligence by a guest who has accepted the hospitality of the owner. A secondary policy, of course, is to prevent collusive suits between friends where the driver admits to negligence in order to shift the burden to his insurance carrier. (26 Cal.L.Rev. 251, 252.)" (*Stephan v. Proctor,* 235 Cal.App.2d 228, 230 [45 Cal.Rptr. 124].) The purposes of the New Mexico guest statute appear to be precisely the same. (*Romero v. Tilton,* 78 N.M. 696, 701-702 [487 P.2d 157].)

In *Clark v. Clark,* 107 N.H. 351 [222 A.2d 205], the plaintiff and defendants were residents of New Hampshire, a state without a guest statute. They were involved in an accident in Vermont which does have such a law. Refusing to apply Vermont law the Supreme Court of New Hampshire, after an extensive survey of modern conflicts doctrine, said:

"The only reasons that have ever been given, or that Vermont could possibly have, for enactment of its guest statute are (1) to protect kindly hosts from ungrateful guests ('don't bite the hand that feeds you'), and (2) to protect liability insurance companies from suits brought by guests colluding with their hosts. Ehrenzweig, Conflict of Laws, s.220 (1962). Vermont's interests under its statute are in suits brought in its own courts

affecting hosts, guests and insurance companies subject to its jurisdiction. Our primary interest arising out of our ordinary negligence law correspondingly applies to suits in our courts affecting people and relationships with which we have a legitimate concern. That interest in this case is a real one." (*Clark* v. *Clark,* 107 N.H. 351, 356 [222 A.2d 205].)

■ It seems inconceivable to us that New Mexico has any legitimate interest in California guests not biting the hands of California hosts or in such guests not colluding with their hosts in California courts to shift the burden to an insurance carrier that has assumed what is essentially a California risk. Undoubtedly where both the ingratitude and the collusion manifest themselves outside of her border, New Mexico's primary interest in the careful use of her highways should prevail. The conflict, if any, with California law, is spurious.

The assault on traditional conflicts doctrine has been particularly successful in the field of foreign guest statutes. The leading case is, of course, *Babcock* v. *Jackson,* 12 N.Y.2d 473 [240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1]. (Cf. *Dym* v. *Gordon,* 16 N.W.2d 120 [262 N.Y.S.2d 463, 209 N.E.2d 792].) *Babcock* started an almost unanimous trend in other jurisdictions. (See cases collected in 29 A.L.R.3d 603, 645-650.) Even though the doctrinal basis of *Babcock* and its issue may be in dispute, (*Comments on Babcock v. Jackson, A Recent Development In Conflict Of Laws,* 63 Colum. L.Rev. 1212) we see no reason for not joining the club.

Finally it should be pointed out that Von Kuznick, as distinguished from Arrow, would gain little comfort from a holding to the effect that the New Mexico guest statute applies to the subject accident. In *Gallegos* v. *Wallace,* 74 N.M. 760 [398 P.2d 982], the Supreme Court of that state held that for technical reasons rooted in its constitution, the statute was invalid insofar as it applied to a non-owner driver. (See also *Romero* v. *Tilton,* 78 N.M. 696 [437 P.2d 157].)

## II.

■ We examine, then, whether the record discloses any evidence to support the finding that the defendant driver was guilty of "wilful misconduct" so as to afford the plaintiff recovery under California law.

Von Kuznick was driving at a rate of 70 to 80 miles per hour at the time of the accident, despite the decedent's prior protests and remonstrations that "he shouldn't try to set a record by driving so fast." The posted speed limit was 60 miles per hour. The accident occurred when he unsuccessfully attempted to negotiate a 45 degree curve in the road which, according to

the investigating officer at the scene of the accident, could not have been safely done at a speed in excess of 60 to 70 miles per hour.

The defendant was aware that the "roads weren't really too good there." That is, the lanes were narrow with very little place in the supporting shoulders. There was also no painted center divider line.

Citing *Lynch* v. *Birdwell,* 44 Cal.2d 839 [285 P.2d 919], the defendants contend that speed alone is not sufficient to support a finding of wilful misconduct, unless it is "joined with other circumstances in order to constitute wilful misconduct under the Guest Law." Without deciding the validity of this argument (cf. *Hoffman* v. *Slocum,* 219 Cal.App.2d 100, 103 [32 Cal. Rptr. 635]), we nevertheless hold that such "other circumstances" do in fact, exist here. We therefore reject the claim that the evidence is insufficient to support the judgment.

### III.

Defendants' last contention is that the jury was confused by the instruction relating to ordinary care. It is also without merit. We accept defendants' suggestion that the issue of ordinary care had no relevance to the case at bar. We set out the instruction which raises the issue:

"It is the duty of every person using a public street or highway . . . to exercise ordinary care at all times to avoid placing himself or others in danger and to use like care to avoid an accident from which an injury might result."

Immediately after this instruction the following one was read:

"A driver is not subject to liability for any injury to his guest unless such injury proximately resulted from the intoxication or wilful misconduct of the driver."

The next instruction outlines the elements that the plaintiff must prove by a preponderance of the evidence in order for liability to attach, the first of which must be "[w]ilful misconduct of the defendant Von Kuznick." Finally, the very next instruction defines wilful misconduct as "intentional wrongful conduct, done either with knowledge that serious injury probably will result or with a wanton and reckless disregard of the possible results."

At a later point the jury was instructed that "[w]hether some of these instructions will apply will depend upon what you find to be the facts." It must be presumed that the jury did, in fact, apply only those instructions which were relevant to the fact that the plaintiff's decedent was a guest in the vehicle. (*Lynch* v. *Birdwell, supra,* 44 Cal.2d at p. 848; *People* ex rel. *Dept. of Public Works* v. *Lillard,* 219 Cal.App.2d 368,

376 [33 Cal.Rptr. 189].) Such a presumption is further supported in this case in that the three instructions following the one in question dealt directly with wilful misconduct, making it abundantly clear that the standard of ordinary care is not applicable where a guest is suing.

In *Chappell* v. *Palmer,* 10 Cal.App.3d 71 [88 Cal.Rptr. 710], the instructions suggested that wilful misconduct "is a form of negligence." The court, reading the various instructions as a whole, affirmed the trial court and particularly pointed out that the instructions were not conflicting.

We do not see how, in light of the other instructions and the issues brought out at the trial itself, the jury could have been confused. No prejudice to the defendants which would require a reversal has been demonstrated.

The judgment is affirmed.

Stephens, J., and Aiso, J., concurred.